## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION

JAMES LEE SPANN,        )
                             )
          Plaintiff,      )
                             )     Case No. 14-4259-CV-C-BCW
     v.                        )
                             )
GEORGE LOMBARDI, et al.,   )
                             )
          Defendants.   )

## STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

State Defendants George Lombardi, Alan Earls, Dave Dormire, Jay Cassady, Raina Martin, Shane Counts, Noel Obi, Michael Cahalin, Timothy Murray, April Purifoy, Brian Schmutz, Jim Wakeman, Nick Miller, and Kelly Deardeuff, by and through counsel Assistant Attorneys General Gerald M. Jackson and Ashley D. Ray, move the Court pursuant to Fed. R.Civ. P. 56 and the Court's Pretrial Scheduling Order to grant summary judgment to Defendants and against Plaintiff because the undisputed, material facts demonstrate that Defendants are entitled to summary judgment as a matter of law.

1

# TABLE OF CONTENTS

Table of Authorities………………………………………………………………3

Statement of Uncontroverted Facts…………………………………………5

I: Plaintiff was afforded due process at his adjustment hearing, plaintiff's subsequent grievances, and his following classification hearings per the 14th amendment………………………………………………………………13

a. Plaintiff was afforded due process at his adjustment hearing…………......13

b. Plaintiff is not entitled to constitutional due process protections for the state authorized grievance procedures…………………………………………15

c. Plaintiff was not deprived of meaningful hearings for his periodic Ad. Seg. Reviews……………………………………………………………………16

II: Plaintiff has failed to establish that any subsequent disciplinary action or cell search was a result of retaliation. Plaintiff also fails to prove that his legal mail was tampered with…………………………………………………..18

III: There is no unlawful act performed in order to satisfy the elements for a civil conspiracy…………………………………………………………..20

IV: Plaintiff is precluded from his compensatory relief sought in his petition per the Prison Litigation Reform Act as there is no showing of pain that is not mental or emotional…………………………………………………………..21

V: Assertions of claims previously asserted in prior Motions to Dismiss……23

2

# TABLE OF AUTHORITIES

Cases

Abdur-Raheem v. Selsky,
  806 F.Supp. 2d 628 (W.D.N.Y. 2011.) ............................................................ 2
Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ...................................................................................... 2, 12
Buford v. Tremayne,
  747 F.2d 445 (8th Cir. 1984) ........................................................................ 2, 12
Cafeteria Workers v. McElroy,
  367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961) ............................... 2, 8, 14
Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) ................................................................................. 2, 12, 13
Davis v. Oregon Cty., Missouri,
  607 F.3d 543 (8th Cir. 2010) ............................................................................. 2
Dixon v. Brown,
  38 F.3d 379 (8th Cir. 1994) .......................................................................... 2, 18
Farmer v. Brennan,
  511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) ................................ 2
Franco v. Kelly,
  854 F.2d 584 (2d Cir. 1988) ................................................................... 3, 19, 20
Gerstein v. Pugh,
  420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) ..................................... 2, 14
Hewitt v. Helms,
  459 U.S. 460, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983) ......................... 2, 14, 16
Hudson v. Palmer,
  468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ................................... 2
Kelly v. Brewer,
  525 F.2d 394 (8th Cir. 1975) ................................................................... 2, 16, 18
Lewis v. Jacks,
  486 F.3d 1025 (8th Cir. 2007) ..................................................................... 2, 18
Livers v. Schenck,
  700 F.3d 340 (8th Cir. 2012) ...................................................................... 3, 20
Mathews v. Eldridge,
  424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ...................... 2, 11, 16, 19
Meuir v. Greene Cty. Jail Employees,
  487 F.3d 1115 (8th Cir. 2007) ..................................................................... 2, 18

Parrat v. Taylor,
　　451 U.S. 527, 101 S.Ct. 1908 (1981) ........................................................ 2, 15

Rhodes v. Chapman,
　　452 U.S. 337, 101 S.Ct. 2392. (1981) .......................................................... 2

Royal v. Kautzky,
　　375 F.3d 720 (8th Cir. 2004) ..................................................................... 22

Sprouse v. Babcock,
　　870 F.2d 450 (8th Cir. 1989) .................................................................. 3, 18

Superintendent, Massachusetts Corr. Inst., Walpole v. Hill,
　　472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985) ..................... 2, 13, 14

White v. Smith,
　　696 F.3d 740 (8th Cir. 2012) .............................................................passim

Williams v. Hobbs,
　　662 F.3d 994 (8th Cir. 2011) ................................................................. 2, 17

Wilson v. Seiter,
　　501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) .............................. 2

Wolff v. McDonnell,
　　418 U.S. 539, 94 S.Ct. 2963 (1974) ....................................................... 2, 13

Statutes

42 U.S.C. §1997e(e) ................................................................................. 21, 22

42 U.S.C. § 1983 ...................................................................................... 15, 16

§ 217.370 RSMo........................................................................................... 15

§ 558.016, RSMo............................................................................................ 5

§ 565.073, RSMo............................................................................................ 5

Rules

Fed. R.Civ. P. 56 .......................................................................................... 1

Fed.R.Civ.Pro. 56(c) .................................................................................... 12

## STATEMENT OF UNCONTROVERTED FACTS

1. Plaintiff James Lee Spann is currently in the custody of the Missouri Department of Corrections due to a conviction of Domestic Assault in the 2nd Degree as a prior and persistent felony offender pursuant to § 565.073, RSMo. and § 558.016, RSMo. Exhibit A (Certified Court Records). Plaintiff was sentenced to fifteen years in the Missouri Department of Corrections on August 7, 2009. Id.

2. Defendant George Lombardi was the Director of the Missouri Department of Corrections until January 2017. Exhibit B, George Lombardi Deposition p. 6.

3. Defendant Dave Dormire was the Director of Missouri Department of Corrections Division of Adult Institutions until March 31, 2017. Exhibit C Dave Dormire Deposition pp 5-6.

4. Defendant Alan Earls was the Deputy Director of the Missouri Department of Corrections Division of Adult Institutions until February 28th, 2018. Exhibit D Alan Earls Deposition p. 8.

5. Defendant Jay Cassady was the Warden of the JCCC until October of 2017. Exhibit E Jay Cassady Deposition p. 4.

6. Defendant Joshua Wyrick was an investigator with the JCCC and is now a Correctional Classification Assistant at JCCC. Exhibit F Wyrick Deposition p. 7.

7. Defendant Raina Martin is a Functional Unit Manager at JCCC. Complaint at ¶15 and Answer at ¶15.

8.  Defendant Michael Cahalin is a Correctional Officer III at JCCC at all times relevant. <u>Complaint</u> at ¶10 and <u>Answer</u> at ¶10.

9.  Defendant Brian Schmutz is a Functional Unit Manager at JCCC at all times relevant. <u>Complaint</u> at ¶14 and <u>Answer</u> at ¶14.

10. Defendant Kelly Deardeuff is a Correctional Officer II at JCCC at all times relevant. <u>Complaint</u> at ¶19 and <u>Answer</u> at ¶19.

11. Defendant April Purify is a Mail Room Supervisor at JCCC at all times relevant. <u>Complaint</u> at ¶39 and <u>Answer</u> at ¶39.

12. Defendant Noel Obi is a Case Manager at JCCC at all times relevant. <u>Complaint</u> at ¶37 and <u>Answer</u> at ¶37.

13. Defendant Nick Miller is an Investigator with the Department of Corrections at all times relevant. <u>Complaint</u> at ¶17 and <u>Answer</u> at ¶17.

14. Defendant Timothy Murray was a Correctional Officer I at JCCC during the relevant time period. <u>Complaint</u> at ¶20 and <u>Answer</u> at ¶20.

15. Defendant Shane Counts was a Correctional Officer I at JCCD during the relevant time period. <u>Complaint</u> at ¶38 and <u>Answer</u> at ¶38.

16. Defendant Jim Wakeman is a Maintenance Supervisor Working in JCCC. <u>Complaint</u> at ¶13 and <u>Answer</u> at ¶13.

17. Plaintiff is currently an inmate of the Jefferson City Correctional Center (hereafter "JCCC") in Jefferson City, Missouri. <u>Exhibit G</u> James Spann Deposition pp51-52. Plaintiff was previously held at the Missouri Eastern Correctional Center (Hereafter "MECC"). <u>Id</u>.

6

18. Plaintiff was found guilty of a rule 7.1 Forcible Sexual Misconduct violation that occurred on April 2, 2013 while at MECC. Exhibit H Conduct Violation Report and Exhibit I James Spann Deposition at p 123. Following this finding, Plaintiff was transferred from MECC to JCCC. Exhibit G James Spann Deposition at pp 51-52.

19. JCCC is a prison comprised of eight housing units. Exhibit J Raina Martin Deposition p 5. Offenders in Administrative Segregation (hereafter "Ad-Seg") are held in Housing Units 7 and 8. Id.

20. Plaintiff was assigned to Housing Unit 8 upon arrival to JCCC. Exhibit K Housing Report. Plaintiff was eventually moved to Housing Unit 7. Id.

21. While in Housing Unit 7, Plaintiff was assigned Offender Timothy Hawkins as a cell mate. Exhibit L Investigative Report *Confidential*.

22. On April 3, 2014, Offender Hawkins alleged to a Correctional Officer in Housing Unit 7 that the Plaintiff sexually assaulted him. Exhibit L *Confidential*.

23. In particular, Offender Hawkins alleged that Plaintiff threatened to kill him and choked him out. Id. at 2. *Confidential*

24. Offender Hawkins lost consciousness and when he awoke on the floor with his underwear removed. Id. *Confidential*  He reported that his anus hurt and was greasy. Id. *Confidential*

25.  Plaintiff, when Offender Hawkins awoke, told him he "needed to push all of that stuff out" when Offender Hawkins sat on the toilet in their cell. Id. *Confidential*

26. Investigator Nick Miller was assigned to investigate the allegations. Id. *Confidential* at 1598. In the course of his investigation, Investigator Miller collected a DNA sample from Offender Hawkins. Id. at 1559. *Confidential*

27.  On March 24, 2015, the results from the Crime Lab were received by Investigator Miller. Exhibit M Crime Lab Report. The crime lab found a substance consistent with semen present on the rectal swabs. Id.

28. Investigator Miller, based on his investigation, concluded that Plaintiff committed a Forcible Sexual Misconduct on Offender Hawkins. Exhibit L. at 4.

29. Investigator Joshua Wyrick issued Plaintiff James Spann a conduct violation for Forcible Sexual Misconduct on July 2, 2014. Exhibit N Conduct Violation Report. Investigator Wyrick wrote the conduct violation due to department policy precluding the investigator from the Investigator General's Office issuing conduct violations. Exhibit O Joshua Wyrick Deposition at 13.

30. An Adjustment Hearing was held to adjudicate this conduct violation comprised of Functional Unit Manager Raina Martin and Correctional Officer III Michael Cahalin. Exhibit P Raina Martin Deposition p. 77. The Adjustment Board found Plaintiff guilty of Forcible Sexual Misconduct against Timothy Hawkins on July 25, 2014. Exhibit Q Disciplinary Action

8

Report. The recommendation was reviewed and approved by both Bill Dunbar and Jay Cassady, the Warden. Id.

31. Due to the second 7.1 Forcible Sexual Misconduct finding, Warden Jay Cassady wrote a report to Deputy Division Director Alan Earls requesting Plaintiff be placed on single-cell status. Exhibit R. Jay Cassady Deposition at p 52. Single cell status is reserved for offenders whose behavior is life-threatening or very dangerous. Exhibit S Alan Earls Deposition at pp 68-69. At the relevant time, the responsibility for placing someone one single cell status belonged to Alan Earls. Id.

32. Offenders in Ad. Seg. are confined for up to 23 hours a day. Exhibit T Raina Martin Deposition at 33. There are fewer fights in Ad. Seg. Id. Offenders are allowed recreation in a more restricted form than general population. Exhibit U Noel Obi Deposition at p. 30.

33. While in Ad. Seg., Plaintiff was scheduled for classification hearings at ninety day intervals. Exhibit V Alan Earls Deposition at p. 18. These hearings could determine whether he would move within a "phase program." Exhibit W Noel Obi Deposition at p. 9. The "phase program" was a program that allowed an offender to get additional privileges while in Ad. Seg. Exhibit X Jay Cassady Deposition at p. 64.

34. The classification committee could, if the offender showed enough progress, recommend to the deputy director that an offender be released from single cell status. Exhibit Y Alan Earls Deposition at p. 71.

35. In addition to the hearings that allow Plaintiff to phase up and down, the Department of Corrections has a Potosi Reintegration unit for Offenders who have a single-cell mandate. <u>Exhibit Z</u> Alan Earls Deposition at p. 80. The program would require the offender to transfer to Potosi Correctional Center to complete the program. <u>Exhibit AA</u> Alan Earls Deposition at p. 84. When offered the opportunity to enter this program, Plaintiff refused. <u>Exhibit AB</u> Raina Martin Deposition at pp 100 and 107. *See also* <u>Exhibit AC</u> Noel Obi Deposition at pp 60-61.

36. While in Ad. Seg., an offender can only have up to 12 inches of legal material in their cell. <u>Exhibit AD</u> Noel Obi Deposition at p. 52. When an Offender has over 12 inches of legal material, they may give the excess to their case manager who will store the material in a secure location. <u>Id</u>.

37. Legal mail is brought by the case manager to the offender from the mail room. <u>Exhibit AE</u> Noel Obi Deposition at pp 13-15. The mail remains unopened and is opened in the presence of the offender. <u>Id</u>. The mail is checked for contraband and given to the offender. <u>Id</u>. Noel Obi, Plaintiff's case manager, retrieved any available legal mail from the mailroom every day. <u>Id</u>.

38. Before and during the relevant dates of this suit, the air filters for facilities were replaced and maintained by maintenance staff. <u>Exhibit AF</u> Maintenance Records.

39. Offenders are given a mental health score of one through five based on the severity of their mental illness with 5 being the most serious. <u>Exhibit AG</u> Jay

Cassady Deposition at pp 92-94. Offenders with a mental health score of 5 are not kept at JCCC, instead transferred to Biggs State Hospital. Id.

40. The Secure Social Rehabilitation Unit, or SSRU, was a unit specifically designed for offenders who could not successfully live in general population because they are easily exploited or manifest and display activities that make most people without mental illnesses feel uncomfortable. Exhibit AH Alan Earls at p. 137.

41. Brian Schmutz, a Functional Unit Manager, were never involved in a search of the Plaintiff's cell together. Exhibit AI Brian Schmutz Deposition at pp 44-46. Schmutz did not remove legal mail from any cell. Id. at p. 46.

42. While in Ad. Seg., Plaintiff handed Correctional Officer I Shane Counts an envelope to pass to another offender. Exhibit AJ Shane Counts Deposition at p. 34. Counts felt a ball in the envelope which he believed to be contraband, so he took it to his Sergeant. Id. His sergeant opened the envelope and discovered several pills in the envelope that Plaintiff attempted to pass to another offender. Id. At the direction of his Sergeant, COI Counts issued Plaintiff a conduct violation. Id.

43. While in Ad. Seg., Kelly Deardueff observed tobacco being passed from one cell to another by means of a "Cadillac" or a string retrieval device. Exhibit AK Kelly Deardueff Deposition pp 48-49. One of the cells in question was the Plaintiff's. Id. During a subsequent search, Deardueff discovered tobacco within Plaintiff's cell. Exhibit AL Kelly Deardueff Deposition at 53.

44. Cell Searches, when in Ad. Seg. at JCCC, were typically conducted by two officers to reduce the possibility of retaliation. Exhibit AM Timothy Murray Deposition at p. 67. In Ad. Seg., every shower and rec day, the cells would be searched. Exhibit AO Timothy Murray Deposition at p. 76. An offenders' property may be removed it is broken or if the offender wants it to be removed. Exhibit AP Kelly Deardeuff Depo at p. 46.

45. At this time, Plaintiff is still being held in Ad. Seg. at JCCC. Exhibit AQ James Spann Depositionat p. 63.


## SUGGESTIONS IN SUPPORT OF STATE DEFENDANTS MOTION FOR SUMMARY JUDGMENT

### LEGAL STANDARD

If there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, a court must grant summary judgment. Fed.R.Civ.Pro. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment must initially demonstrate the absence of a triable issue. Celotex, 477 U.S. at 323. Once a summary judgment motion is properly made and supported, however, the non-moving party may not rest upon the allegations in his pleading, but must instead show evidence which indicates that there is a genuine issue of material fact for trial. Buford v. Tremayne, 747 F.2d 445, 447 (8th Cir. 1984). Evidence of a disputed factual issue which is irrelevant, or not significantly probative, will not prevent entry of summary judgment. Anderson v. Liberty

12

Lobby, Inc., 477 U.S. 242 (1986). Summary judgment must be granted to the movant if, after adequate time for discovery, the non-moving party fails to produce any proof to establish the elements essential to the party's case and upon which the party will bear the burden of proof at trial. Celotex, 477 U.S., at 322-23.

**I: Plaintiff was afforded due process at his adjustment hearing, plaintiff's subsequent grievances, and his following classification hearings per the 14th amendment.**

**a. Plaintiff was afforded due process at his adjustment hearing**

Plaintiff contends he was denied due process both at his adjustment hearing, his subsequent grievances, and in his classification hearings. The court in Wolff grappled with this question of process afforded on disciplinary hearings, finding they required (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 536-567, 94 S.Ct. 2963, 2978-2980 (1974). Findings of the disciplinary board must be supported by some evidence in the record. Superintendent,

<u>Massachusetts Corr. Inst., Walpole v. Hill</u>, 472 U.S. 445, 454, 105 S. Ct. 2768, 2773, 86 L. Ed. 2d 356 (1985).

The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action. <u>Id</u>. *citing* <u>Cafeteria Workers v. McElroy</u>, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). The interest of the offender must be accommodated in the distinctive setting of a prison, where disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." <u>Id</u>. The Due Process Clause requires only an informal nonadversary review of evidence, in order to confine an inmate feared to be a threat to institutional security to administrative segregation. <u>Hewitt v. Helms</u>, 459 U.S. 460, 474, 103 S. Ct. 864, 873, 74 L. Ed. 2d 675 (1983). The Court explicitly rejected the suggestion that an adversary proceeding, accompanied by traditional trial-type rights, was required, and instead permitted an informal proceeding designed to determine whether probable cause existed to believe that the detained person had committed a crime. <u>Id</u>. *citing* <u>Gerstein v. Pugh</u>, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

In this case, Plaintiff was investigated for a forcible sexual misconduct against Timothy Hawkins, another offender. SOF ¶¶22-28. The assault

occurred while Plaintiff and Offender Hawkins were in Ad. Seg. with one another.¶ Based on the investigation of Investigator Nicholas Miller which included interviews, photographs, and a DNA test which the Plaintiff refused to provide a sample for that detected the presence of semen, an adjustment board consisting of Raina Martin and Michael Cahalin found Plaintiff guilty of forcible sexual misconduct. At that hearing, the plaintiff was allowed to give a statement and witness statements were taken at the behest of Plaintiff. Plaintiff was assigned to Ad. Seg.. Plaintiff was afforded an opportunity to be heard, was able to call a witness to be interviewed, and had a decision based on substantial evidence. Plaintiff has failed to establish through competent evidence that he was deprived due process in his initial placement in Ad. Seg..

**b. Plaintiff is not entitled to constitutional due process protections for the state authorized grievance procedures.**

As for the grievance procedure, without conceding any point that the State Defendants have deprived Plaintiff with his due process in the appeals process, the grievance process is not a constitutionally protected right subject to federal suit under 42 U.S.C. § 1983. § 1983 pertains only to deprivations of federally protected rights. *See* Parrat v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912 (1981). Missouri Department of Corrections grievance process is policy deriving from the authority granted to the Director pursuant to §

15

217.370 RSMo. As Plaintiff's allegations in regards to the grievance procedure are not of a constitutionally protected right, and rather, a state right, he is precluded from relief under § 1983.

### c. Plaintiff was not deprived of meaningful hearings for his periodic Ad. Seg. reviews

There is no dispute that plaintiff is entitled to ongoing review to determine if he can be released from Ad. Seg. and that those hearings must be meaningful hearings. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) "Prison officials must engage in some sort of periodic review of the confinement of such inmates" in Ad. Seg.. 459 U.S. 460 *at* 477. Unlike punitive segregation, Ad. Seg. is not punitive and looks to the present and the future rather than the past. Kelly v. Brewer, 525 F.2d 394 (8th Cir. 1975). Ad. Seg. involves the exercise of administrative judgment in determining whether an inmate should be segregated from the general population and predicting what he will probably do or have done to him if permitted to remain in population or to return to population after a period of segregation. Id. The ultimate decision in a given case must be left to the informed judgment, including discretionary judgment, of prison administrators, subject to review by their own superiors

and ultimately by the courts in proper cases." <u>Williams v. Hobbs</u>, 662 F.3d 994, 1007 (8th Cir. 2011).

Plaintiff is afforded review hearings regularly, and is allowed to attend and make a statement. The board members can make recommendations based on their findings at the hearing. However, he is also on single-cell status and the only available single cells in JCCC are in the Ad. Seg. housing units. Plaintiff was placed on single cell status after a second consecutive finding of forcible sexual misconduct against a cellmate. At this point, allowing the Plaintiff to have a cell mate threatens the safety and security of any inmate who may be celled with him unless a rehabilitative step is used. In this case, the rehabilitative step is the Potosi Reintegration Program, which would have allowed plaintiff to be removed from single cell status and allow him to eventually be released from Ad. Seg.. Plaintiff, on multiple occasions, refused.

Even while on single cell status, the classification board could make recommendations and progress Plaintiff through the step program to steps that don't require a roommate. However, in balancing the need to provide the least restrictive means of confinement for Plaintiff and ensuring the safety and security of other offenders, the State Defendants require that Plaintiff take the steps to complete the Potosi Reintegration Program. By his own refusal to act, Plaintiff has rendered his own procedural safeguards ineffective.

**II: Plaintiff has failed to establish that any subsequent disciplinary action or cell search was a result of retaliation. Plaintiff also fails to prove that his legal mail was tampered with.**

A prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline. Meuir v. Greene Cty. Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007). The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994)).

In Dixon, the court reversed when presented with evidence of retaliatory and false disciplinary charges when the disciplinary committee dismissed the charge and the plaintiff was not punished. 38 F.3d 379. In Sprouse, the court reversed and remanded when a disciplinary notice was filed by a corrections officer who was the subject of a grievance appeal. Sprouse v. Babcock, 870 F.2d 450, 451 (8th Cir. 1989). The prison's appeal process reversed the disciplinary action because of a policy that prohibits a prison employee involved in an inmate grievance from participating in a disciplinary action pertaining to the grievance. Id. In Kelly, the court found allowed a case to survive summary judgment after the State Supreme Court of Wyoming County reversed and

remanded a prison disciplinary action.  Franco v. Kelly, 854 F.2d 584, 585 (2d Cir. 1988).

Thus far, there has been no evidence to suggest the disciplinary actions here were false and the result of retaliation. As for the conduct violation issued by Shane Counts, the violation was supported by the envelope of drugs handed to Counts by the Plaintiff. Exhibit P. at 34. The veracity of this conduct violation is supported by both the observation of the officer and the presence of the drugs.

Kelly Deardeuff observed tobacco being passed from one cell to another by means of a "Cadillac." Exhibit S. at pp. 48-49. As one of the cells belonged to the Plaintiff, his cell was searched. Id. During the search, tobacco was discovered in Plaintiff's cell. Id. at p. 53.

In both circumstances, there is no evidence that any governing body found enough evidence to completely overturn the conduct violations as was the case with both Sprouse, Dixon, and Kelly. There is no evidence to show that these conduct violations are false.  Thus, in regards to the disciplinary actions, the State Defendants are entitled to summary judgment in their favor on this issue.

As for the allegation of his legal mail being tampered with, there is no evidence to support that assertion. Each allegation in the pleadings of a cell search being done with the express goal of taking and destroying legal mail is

without any supporting evidence. JCCC policies are that an inmate in administrative segregation may have up to 12 inches of legal mail in their cell due to safety concerns of having too much clutter in the cells and the potential arson risks that come with that clutter. Exhibit O at P. 52. The offender is allowed to go through their legal mail to determine what they need in their cell and the excess is kept in a secure facility and available upon request. Id. There has been no evidence to suggest that Noel Obi has mismanaged the Plaintiff's legal mail or acted outside of the policy in his handling of his legal mail. Thus, State Defendants are entitled to summary judgment on this issue.

**III: There is no unlawful act performed in order to satisfy the elements for a civil conspiracy.**

To prove a civil conspiracy under § 1983, Plaintiff must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." Livers v. Schenck, 700 F.3d 340, 360–61 (8th Cir. 2012). "To be liable as a conspirator [one] must be a voluntary participant in a common venture.... It is enough if [Defendants] understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do [their] part to further them." White v. Smith, 696 F.3d 740, 757 (8th Cir. 2012).

The requirement of an unlawful act is where Plaintiff fails in this point. Plaintiff makes a long list of alleged acts that constitute the conspiracy. As stated before, no evidence has been adduced to suggest that Noel Obi delayed or destroyed Plaintiff's legal mail. No evidence has been adduced to suggest that Jay Cassady refused to respond to Plaintiff's grievances. Noel Obi's regulation of how much legal mail the Plaintiff has in his cell is a permissible and legal action when balanced with the need for safety and security in the institution. Plaintiff, as would anyone in Ad. Seg., is subjected to cell searches regularly to ensure the safety and security of the other offenders and themselves. Exhibit Q at p. 76. Plaintiff has failed to establish that his "missing" legal mail went missing because of the State Defendants. As discussed, Shane Counts lawfully issued a conduct violation to Plaintiff based on some evidence. None of the acts, when taken alone or with one another constitute a conspiracy because none of the acts are an overtly unlawful action.

Thus, State Defendants are entitled to summary judgment in their favor.

**IV: Plaintiff is precluded from his compensatory relief sought in his petition per the Prison Litigation Reform Act as there is no showing of pain that is not mental or emotional.**

Per 42 U.S.C. §1997e(e), the Prison Litigation Reform Act (PLRA), no federal civil action may be brought by a prisoner confined in a jail, prison, or

other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act. A prisoner is defined within that same section as any person incarcerated in any facility who is accused of, convicted of, sentenced for, or adjudicated for violations of the criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program. Id. The court "we read section 1997e(e) as limiting recovery for mental or emotional injury in all federal actions brought by prisoners." Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004). This does not preclude the plaintiff from seeking nominal, punitive, declaratory, or injunctive relief. Id.

Petitioner is seeking between $800,000 to $1,800,000 in compensatory damages and a like amount in punitive damages. See Pet. 3rd Consolidated Amended Complaint. (Doc. #282). Petitioner is not entitled to compensatory relief per the as he alleging purely mental and emotional pain and not a physical injury or the commission of a sexual act.

Thus, State Defendants are entitled to summary decision rejecting Plaintiff's prayer for compensatory damages.

**V: Assertions of claims previously asserted in prior Motions to Dismiss**.

State Defendants reassert the defenses alleged in prior Motions to Dismiss, as the uncontroverted facts support all claims of privileges and immunities stated in those motions. *See* Docs. 29, 178, and 229 which are all incorporated by reference.

WHEREFORE, State Defendants pray this court grant the relief requested herein or any relief deemed just and proper.

Respectfully submitted,

**JOSHUA D. HAWLEY**
Missouri Attorney General

/s/ *Gerald M. Jackson*
Gerald M. Jackson
Assistant Attorney General
Missouri Bar No. 66995

P.O. Box 899
Jefferson City, MO 65102
Phone (573) 751-7493
Fax (573) 751-5660
Email: gerald.jackson@ago.mo.gov
**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of November, 2018, I electronically filed the foregoing with the Clerk of the Court's ECF system which sent notification to the following:

Bradford Lear
Todd Werts
Lear & Werts LLP
2003 W. Broadway, Suite 107
Columbia, MO 65203

Dwight Vermette
Kevin Peek
Eckenrode-Maupin
11477 Olde Cabin Rd., Ste. 110
St. Louis, MO 63141

/s/ *Gerald M. Jackson*
Gerald M. Jackson
Assistant Attorney General