IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JAMES LEE SPANN,<br>aka MELVIN FORD | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Case No. 2:14-CV-04259-BCW |
| GEORGE A. LOMBARDI, et al., | )<br>)<br>) | |
| Defendants. | | |

## ORDER

Before the Court is Plaintiff's motion for partial summary judgment. (Doc. #382). The Court, being duly advised of the premises, denies said motion.

## BACKGROUND

The above-captioned case consolidates three actions brought by Plaintiff James Spann that arose out of an administrative adjudication of a charge of forcible sexual misconduct during his incarceration, and his subsequent placement in solitary confinement. Spann is housed within Jefferson City Correctional Center ("JCCC") located in Jefferson City, Missouri. As relevant for purposes of this motion, Count I of Spann's complaint alleges 42 U.S.C. § 1983 claims for denial of his due process rights under the Fourteenth Amendment against various Missouri Department of Corrections ("MDOC") officials (collectively, "MDOC Defendants").[1] Specifically, Spann alleges due process violations in the disciplinary action with respect to the alleged major conduct violation against Jay Cassady, Nick Miller, Raina Martin, Michael Cahalin, George Lombardi, Dave Dormire, and Alan Earls ("CDV Defendants"). He further alleges that the same Defendants,

---

[1] Although initially Spann named other MDOC officials as defendants, several of them were dismissed in the course of the litigation.

1

along with Brian Schmutz ("AS Defendants") denied him due process in the review of his solitary confinement status. Spann seeks § 1983 compensatory and punitive damages and various injunctive relief, including his release from solitary confinement.

## LEGAL STANDARD

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Helm Fin. Corp. v. MNVA Railroad, Inc., 212 F.3d 1076, 1080 (8th Cir. 2000) (citing Fed. R. Civ. P. 56(c)).

A party moving for summary judgment bears the burden to establish that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "When the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that the 'evidence is so powerful that no reasonable jury would be free to disbelieve it.'" Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir. 2008) (citing 11-56 Moore's Federal Practice-Civil § 56.13). When considering a motion for summary judgment, the court must evaluate the evidence in the light most favorable to the nonmoving party and the nonmoving party is entitled to "the benefit of all reasonable inferences." Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991).

## UNCONTROVERTED FACTS

Plaintiff, James Spann, is a prisoner at JCCC, serving a 15-year sentence after being convicted of domestic assault in the second degree, in violation of Mo. Rev. Stat. §§ 565.073 and 558.016.

The following Defendants were allegedly involved in constitutional violations: George Lombardi as the MDOC Director, Dave Dormire as the Director of the MDOC's Division of Adult Institutions, Alan Earls as the Deputy Director the MDOC's Division of Adult Institutions, Raina Martin as a Functional Unit Manager at JCCC, Michael Cahalin as a Correctional Officer III at JCCC, Nick Miller is an Investigator with the MDOC, Jay Cassady as the JCCC's Warden.

Spann's cellmate, Timothy Hawkins, accused Spann of sexually assaulting him on April 3, 2014. Miller was assigned to investigate Hawkins' allegations. Upon conducting his investigation, Miller issued an Investigation Report on June 23, 2014. Miller's Investigation Report does not mention any markings, bruises, or cuts on either Spann or Hawkins that would be consistent with a sexual assault, although Miller testified that he would normally put that information in his report. Miller also testified that he did not recall finding any such markings. Miller's Investigation Report states that Hawkins reported that following the alleged assault, his anus felt greasy. The Investigation Report also states a greasy substance was discovered around Hawkins' anus. Miller collected DNA sample swabs from Hawkins. Spann refused to provide his DNA sample; however, the MDOC Defendants have records of DNA samples of all inmates, including Spann's.

At the time Miller issued his Investigation Report, he did not yet receive Spann's DNA testing results. The Report concluded that the "case against Spann is administratively sustained, pending the outcome of the DNA analysis on the Sexual Assault Evidence Collection Kit and Offender Hawkins clothing at the MSHP Laboratory." (Doc. #382-7). Upon receiving Spann's DNA results, Miller prepared a Supplemental Report on March 24, 2015. The Supplemental Report states that based on the received DNA report, Hawkins' rectal swab "was not cross

3

referenced against Offender Spann's DNA due to him refusing to provide a standard during the investigation." (Doc. #382-15).

Based on Miller's initial Investigation Report, on July 2, 2014, Warden Cassady issued a major conduct violation to Spann for the alleged sexual assault of Hawkins. In deciding whether to issue a major conduct violation, Warden Cassady considered Spann's history, which "may" have included his admittedly mistaken recollection that Spann stabbed another inmate 20 years earlier. In fact, Spann was not involved in that incident. At the time of issuing the major conduct violation, Warden Cassady knew that Spann's DNA testing results had not been received and reviewed.

After a conduct violation was issued and Spann pleaded not guilty to this violation, the Adjustment Board ("Board") conducted a hearing ("Adjustment Hearing"), pursuant to MDOC policy. Manager Martin and Lieutenant Cahalin were assigned to the Board to conduct a hearing. Spann was provided with a conduct violation that informed him of the charges against him.

Under the MDOC policy, an offender who is given a conduct violation for violating a major rule must be given a hearing before the Adjustment Board no sooner than 24 hours and no later than seven days from the day the conduct violation is provided to the offender.

The notice did not state the exact date of the hearing and did not mention that solitary confinement and loss of the parole eligibility date may result from the hearing. Spann's Adjustment Hearing started sometime in July 2014 and was then tabled until July 25, 2014. On July 21, 2014, Manager Martin sent an email to Lieutenant Cahalin, stating, "He is guilty."

On July 25, 2014, the Board issued a written report of the hearing on the conduct violation ("Disciplinary Action Report"). At the hearing, Spann asked to call Matthew Johnson as his witness. Witnesses were not called, but Manager Martin wrote in the Disciplinary Action Report

4

that "offender requested witnesses, see attached." The attachment Martin referenced is not part of the administrative MDOC record. The Disciplinary Action Report stated: "Based on evidence and investigative material . . . offender Spann sexually assaulted another offender." Warden Cassady was the official responsible for reviewing the Disciplinary Action Report.

As a result of the Adjustment Hearing and the Disciplinary Action Report, Spann has been held in solitary confinement since April 11, 2014. Because of this status, Spann is required to stay in his cell for 23 to 24 hours a day, is not allowed to participate in vocational training, educational programs, or recreational activities, attend religious services, use the gym or the law library, or have a radio or television. In addition, Spann's parole eligibility date was changed from December 16, 2015 to June 16, 2020.

The MDOC has conducted several 90-day reviews of Spann's solitary confinement status, as required by the MDOC policy. The only officials authorized to change inmates' solitary confinement status are Deputy Director Earls in consultation with Division Director Dormire. Earls and Dormire did not participate in the 90-day review hearings, but reviewed Spann's continued solitary confinement on an annual basis, without conducting hearings, or giving notice to Spann.

## ANALYSIS

**I.     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT IS DENIED.**

**A.     Plaintiff is not entitled to summary judgment on Spann's claim of due process violation in the disciplinary proceedings against him.**

Spann first argues that there are no genuine issues of material fact and that he is entitled to summary judgment on his § 1983 claim of denial of due process in the disciplinary action of sustaining a major conduct violation of sexual misconduct against him. The CDV Defendants respond that Spann is not entitled to summary judgment on this issue, because they have complied with the minimal levels of due process to which Spann is entitled as an MDOC inmate.

5

To succeed on a § 1983 claim, Spann must establish that a "violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

The CDV Defendants do not dispute that they were acting under the color of state law. Thus, to determine whether Spann is entitled to summary judgment on his § 1983 claim, the only question before the Court is whether Spann has established absence of genuine issues of material fact as to the violation of his due process rights secured by the Constitution.

"Determining whether plaintiff's confinement to 'adseg' was in violation of his due process rights involves a two-step inquiry: First, the Court determines whether a liberty interest was at stake. Second, the Court must determine what process is necessary to protect that interest." Morgan v. Wallace, No. 1:13CV13 SNLJ, 2014 WL 3557643, at *4 (E.D. Mo. July 18, 2014) (citing Williams v. Hobbs, 662 F.3d 994, 1000 (8th Cir. 2011)). The CDV Defendants do not seem to challenge that Spann's liberty interest was implicated. Thus, the Court considers whether Spann was denied the required process.

In the context of disciplinary proceedings against a prison inmate, due process requires the following minimal safeguards: (i) a written notice, at least 24 hours before the hearing on the disciplinary action "to inform an inmate of the charges and enable him to marshal the facts and prepare a defense"; (ii) an opportunity for an inmate "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; (iii) a written statement from an impartial decisionmaker identifying the evidence relied on and reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974).

6

Case 2:14-cv-04259-BCW   Document 515   Filed 03/28/19   Page 6 of 12

Spann argues that the CDV Defendants denied his due process rights by failing to meet each of the Wolff protections in the disciplinary action against him. The CDV Defendants counter that they have complied with the Supreme Court's mandate with respect to each of the Wolff safeguards.

Specifically, in arguing insufficient notice, Spann asserts that to the extent he received any notice of the hearing, it was constitutionally inadequate, because it failed to advise him of the exact date of the hearing, the possibility of long-term solitary confinement, and the extension of his parole eligibility date. To support this argument, Spann relies on Brown v. Plaut, in which the D.C. Circuit held that a prisoner, who was brought before a prison board the day before the scheduled hearing, without notice of the issue to be decided by the board, "was not provided an accurate picture of what was at stake in the hearing," and "was not given his due process." 131 F.3d 163, 172 (D.C. Cir. 1997). The CDV Defendants assert that conduct violation paperwork, provided to Spann at least 24 hours before the Adjustment Hearing, which contained the name of the victim, the date, time, and the location of the offense, was sufficient for purposes of Spann's due process rights.

The Court finds that Spann, as the moving party that has the ultimate burden of persuasion at trial, has not demonstrated that his "evidence is so powerful that no reasonable jury would be free to disbelieve it." Shakur, 514 F.3d at 890. First, unlike in Brown, where the hearing was held before the date indicated in the notice, Spann received the notice at least 24 hours before the hearing took place, although the notice did not provide the exact day of the hearing. Second, although the notice did not inform Spann of the possibility of long-term solitary confinement and the loss of his parole eligibility date, it did advise Spann of the allegation of sexual assault, including the name of the victim, the date, time, and the location of the offense. This notice might

7

have been sufficient to provide Spann with "an accurate picture of what was at stake in the hearing." Thus, in the Court's view, whether this notice was constitutionally sufficient presents a genuine issue of material fact.

Spann further argues that his due process rights were violated because the CDV Defendants denied him the right to call witnesses at the Adjustment Hearing. In support, Spann relies on Moran v. Farrier, for the proposition that prison officials' arbitrary denial of inmate's request for witnesses, in violation of the prison's policies, violates due process. 924 F.2d 134, 137 (8th Cir. 1991). In opposition, the CDV Defendants assert that Spann was afforded the opportunity to call witnesses during the Adjustment Hearing, when a statement of his witness, Mathew Johnson, was retrieved.

In the context of disciplinary hearings relating to administrative confinement of inmates, due process requires only an informal, non-adversary review of the evidence. Hewitt v. Helms, 459 U.S. 460, 474 (1983). "[P]rison officials have broad discretion to limit an inmate's right to call witnesses"; however, "the officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify . . . either by making the explanation a part of the administrative record in the disciplinary proceeding, or by presenting testimony in court . . . ." Espinoza v. Peterson, 283 F.3d 949, 953 (8th Cir. 2002) (quoting Ponte v. Real, 471 U.S. 491, 497, (1985)) (other citation and internal quotation marks omitted). The Eighth Circuit has "recognized that prison officials have the discretion to accept an inmate witness's written statement in lieu of live testimony at a disciplinary hearing . . . ." Espinoza v. Peterson, 283 F.3d 949, 953 (8th Cir. 2002) (citation omitted).

Viewing the evidence in the light most favorable to the CDV Defendants and drawing all reasonable inferences in their favor, the Court finds that there are genuine issues of material fact

8

as to whether Spann's due process right to call witnesses at the Adjustment Hearing was satisfied. The disputed facts of whether Manager Martin collected a statement from Spann's witness Johnson and whether it was considered by the Board are questions for the jury.

With respect to the third Wolff safeguard, Spann argues that he was denied due process because he did not receive a written statement from an impartial decisionmaker identifying the evidence relied on to support the disciplinary conviction and the reasons for the disciplinary action. In particular, Spann asserts that the Disciplinary Action Report did not provide a constitutionally adequate explanation of the basis for discipline. The CDV Defendants argue that the Disciplinary Action Report, citing to investigative materials that include specific findings was constitutionally sufficient. The CDV Defendants rely on Brown v. Frey, 807 F.2d 1407, 1407 (8th Cir. 2001), in which the Eighth Circuit affirmed the district court's finding that even a sparse written statement of the evidence the board relied and reasons for disciplinary action, met the requirements of due process, where the report indicated that it relied on the memorandum of investigating officers.

Here, although the written statement in the Disciplinary Action Report was short, it relied on Miller's Investigation Report, as permitted by Brown. Therefore, the Court finds that Spann has not met his burden to show that no reasonable jury could find in favor of the CDV Defendants.

Spann further challenges the impartiality of the three decisionmakers involved in the disciplinary process. Specifically, Spann argues the process started and ended with Warden Cassady, who initiated and finally approved the major conduct violation based, in part, on a mistaken recollection that Spann violently stabbed a man 20 years ago. The CDV Defendants counter that Warden Cassady was not a decision maker because he did not sit on the Adjustment Board; rather Cassady merely reviewed the Board's findings.

Under <u>Wolff</u>, due process requires a meaningful hearing. However, neither <u>Wolff</u> nor the MDOC policies require a meaningful administrative review of a meaningful hearing. Thus, in the Court's view, for purposes of summary judgment, Spann has not met his burden to show that Warden was a decisionmaker for purposes of the Adjustment Hearing.

Spann additionally argues that two of the Board members, Martin and Cahalin, prejudged the hearing, because the day before the hearing, Martin sent an email to Cahalin stating "He is guilty." Spann asserts that because this email was sent before review of any evidence, including the DNA evidence, it establishes that the hearing was prejudged, such that Spann is entitled to summary judgment. The CDV Defendants counter that Martin was an impartial decisionmaker, because the challenged email was sent after the hearing was tabled to allow for the collection of more evidence. According to the CDV Defendants, during the time the hearing was "tabled," Martin collected statements from Spann and his witness Johnson and thus had all the evidence she deemed necessary to make a decision. Spann disputes that the evidence establishes Martin collected the statements; this factual dispute precludes summary judgment.

In sum, viewing this evidence in the light most favorable to the CDV Defendants as the non-moving party, the Court finds genuine issues of material fact exist as to whether Martin and Cahalin prejudged the evidence.

Spann further argues that Defendants Dormire, Lombardi, and Earls ("Supervising Defendants"), who reviewed the primary decisionmakers' decisions, did nothing to protect his due process rights, which, in itself, amounts to a violation of his constitutional rights. The CDV Defendants do not respond to this argument. Any alleged violation by the Supervising Defendants depends on whether the conduct of the primary decisionmakers comported with due process. Because as the Court concluded above, there are genuine issues of fact regarding the alleged denial

of due process by primary decisionmakers, summary judgment with respect to Spann's claims against Supervising Defendants is not proper.

### B. Spann is not entitled to summary judgment on Spann's claim of due process violation in his single-cell status review hearings.

Spann's next argument is that the AS Defendants failed to provide him meaningful hearings relating to his single-cell mandate throughout his five-year solitary confinement. According to Spann, the 90-day hearings conducted pursuant to MDOC polices never included Earls and Dormire – the only officials authorized to change his single-cell mandate, while the annual reviews of the single-cell status by these officials were conducted without Spann ever getting notice or opportunity to be heard. The AS Defendants argue that Spann was afforded review hearings every 90 days by the classification review board, and that any denial of change in his single-cell status resulted from his refusal to participate in remedial programs.

The Eighth Circuit mandated meaningful reviews of all long-term administrative segregations. Kelly v. Brewer, 525 F.2d 394, 402 (8th Cir. 1975). "[C]onstitutionality of administrative segregation depends, 'in individual cases[,] upon the existence of a *valid* and subsisting reason or reasons for the segregation, such as protection of the segregated inmates from other inmates, protection of other inmates and prison personnel from segregated inmates, prevention of escapes and similar reasons.'" Williams v. Hobbs, 662 F.3d 994, 1007 (8th Cir. 2011) (citing Kelly, 525 F.2d at 400).

In this case, the summary judgment record shows that while in administrative segregation, Spann amassed several conduct violations and refused to participate in the Potosi Reintegration Program. The parties dispute whether the conduct violations are by themselves reasons for segregation, and whether the Potosi Reintegration Program was available – these issues present questions of fact for the jury. The Court finds that construing the evidence in the light most

11

favorable to the AS Defendants, Spann has not established a right to summary judgment with "powerful" evidence on the basis that he was denied meaningful review.

To the extent Spann argues that in case the Court grants the instant motion, he is entitled to injunctive relief in the form of expunging Spann's major conduct violation from his record and restoring his presumptive parole eligibility date and providing him with meaningful hearings on his continued solitary confinement, because the Court denies Spann's motion, the Court cannot determine, at this stage, whether the sought injunctive relief is appropriate. The Court also need not consider the issue of applicability of any affirmative defenses, raised by Spann, because the MDOC Defendants do not argue applicability of any affirmative defenses in their opposition. Accordingly, it is hereby

ORDERED Plaintiff's motion for summary judgment (Doc. #382) is DENIED.

IT IS SO ORDERED.

DATED: <u>March 28, 2019</u>

<u>/s/ Brian C. Wimes</u>
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT