IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JAMES LEE SPANN, <br> aka MELVIN FORD <br><br> Plaintiff, <br><br> v. <br><br> GEORGE A. LOMBARDI, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 2:14-CV-04259-BCW <br> ) <br> ) <br> ) <br> ) |

## ORDER

Before the Court is the Missouri Department of Corrections Defendants' motion for partial summary judgment. (Doc. #390). The Court, being duly advised of the premises, denies said motion.

## BACKGROUND

Plaintiff James Spann is serving a 15-year sentence in the custody of the Missouri Department of Corrections ("MDOC"). He is housed at Jefferson City Correctional Center ("JCCC") in Jefferson City, Missouri. The above-captioned case consolidates three actions arising from an administrative adjudication relating to Spann's forcible sexual misconduct, and his subsequent solitary confinement.

Spann brings 42 U.S.C. § 1983 claims under the First, Eighth, and Fourteenth Amendments against various officials of the Missouri Department of Corrections (collectively, "MDOC Defendants") and against Corizon Medical Services and a number of its individual medical professionals (collectively, "Corizon Defendants").[1]

---

[1] On March 14, 2019, the Court issued an order dismissing all of Spann's claims against the Corizon Defendants based on notice of settlement with respect to the Corizon Defendants only. (Doc. #488).

1

For purposes of the instant motion for summary judgment (Doc. #390), only Counts I, IV, and V of the operative complaint (Doc. #282) are relevant. In Count I, Spann alleges a § 1983 claim under the Fourteenth Amendment for denial of his due process rights in the process of adjudicating Spann's guilt for purposes of a major conduct violation. In Count IV, Spann alleges a § 1983 claim for retaliation under the First and Fourteenth Amendments against the MDOC officials Cassady, Schmutz, Noel Obi, Timothy Murray, Kelly Deardeuff, and Shane Counts. In Count V, Spann alleges a claim for civil conspiracy against several MDOC officials. Spann seeks § 1983 compensatory and punitive damages and various injunctive relief, including his release from solitary confinement.

## LEGAL STANDARD

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Helm Financial Corp. v. MNVA Railroad, Inc., 212 F.3d 1076, 1080 (8th Cir. 2000) (citing Fed. R. Civ. P. 56(c)). When considering a motion for summary judgment, the court must evaluate the evidence in the light most favorable to the nonmoving party and the nonmoving party is entitled to "the benefit of all reasonable inferences." Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991).

## UNCONTROVERTED FACTS

Spann, a prisoner at JCCC, is serving a 15-year sentence for a second-degree domestic assault conviction under Mo. Rev. Stat. §§ 565.073 and 558.016. Spann alleges the following MDOC Defendants violated his constitutional rights: George Lombardi, MDOC Director; Dave Dormire, Director of the MDOC's Division of Adult Institutions; Alan Earls, Deputy Director of the MDOC's Division of Adult Institutions; Raina Martin, JCCC Functional Unit Manager;

2

Michael Cahalin, JCCC Correctional Officer III; Noel Obi, JCCC Case Manager; Nick Miller, MDOC Investigator; Jay Cassady, JCCC Warden; Brian Schmutz, JCCC Functional Unit Manager; Kelly Deardeuff, JCCC Correctional Officer II; April Purifoy, JCCC Mail Room Supervisor; Timothy Murray, JCCC Correctional Officer I; Shane Counts, JCCC Correctional Officer I; and Jim Wakeman, JCCC Maintenance Supervisor.

Spann's cellmate, Timothy Hawkins, accused Spann of sexually assaulting him on April 3, 2014. Hawkins further accused Spann of choking him out and threatening to kill him. MDOC Investigator Miller was assigned to investigate Hawkins' allegations against Spann. As part of the investigation, Miller collected a DNA sample from Hawkins. Spann refused to provide a DNA sample in connection with the investigation, but MDOC maintains DNA records for each individual in its custody. Miller's investigation report, dated June 23, 2014, does not mention any physical injury to Hawkins which would be consistent with sexual assault. Though Miller did not have the DNA testing results at the time he issued the investigation report, the report concluded that the "case against Spann is administratively sustained, pending the outcome of the DNA analysis [by the crime laboratory] of the Sexual Assault Evidence Collection Kit and Offender Hawkins clothing." (Doc. #405-7).

After receiving the DNA test results from the crime laboratory, Miller completed a supplemental report, dated March 24, 2015. The supplement states that Hawkins' rectal swab was "not cross referenced" with Spann's DNA because Spann refused to provide a DNA sample during the investigation. (Doc. #405-15).

On July 2, 2014,, Spann received notice of the major conduct violation, based on Miller's investigative conclusion. The major conduct violation was also based on Spann's custodial history, which may have included a mistaken recollection by Cassady that Spann had stabbed another inmate twenty years earlier.

3

Under MDOC policy, if an inmate is determined to have committed a major conduct violation, he or she must be given a hearing before the Adjustment Board. The hearing is to be held no sooner than 24 hours and no later than seven days from the date an inmate receives notice of the conduct violation. Spann's notice did not state a date for his hearing before the Adjustment Board and did not indicate that consequences from the major conduct violation might include solitary confinement and/or the loss of his parole eligibility date.

Spann's hearing before the Adjustment Board, comprised of Functional Unit Manager Martin and Correctional Officer Cahalin, started sometime in July 2014. The hearing was "tabled" until July 25, 2014. On July 22, 2014, Martin sent an email to Cahalin that stated, "[h]e is guilty."

Following the hearing, the Adjustment Board issued a Disciplinary Action Report, concluding that, "based on evidence and investigative material," Spann had sexually assaulted Hawkins. The report further stated Spann "requested witnesses, see attached," but the attachment is not in the record.

Cassady was responsible for reviewing the Disciplinary Action Report. Because this was Spann's second forcible sexual misconduct while in custody, Cassady requested single-cell status for Spann through MDOC Deputy Director Earls.

Thereafter, Spann was placed in single-cell status, referred to as administrative segregation, or adseg. In adseg, Spann was housed near inmates classified as having the highest degree of mental illnesses. Because of the risk of suicide attempts among the mentally ill inmates, the lights in adseg were left on for several days at a time. While in adseg, Spann was entitled to receive legal mail. Spann's cell was subject to multiple searches, in particular, in February 2016. Spann also received conduct violations, including for tobacco contraband and medication hoarding. Spann attempted to address these issues through JCCC's grievance process.

MDOC policy requires an inmate's administrative segregation be reviewed at least every 90 days. Spann's placement in adseg was subject to these 90-day review proceedings, as well as annual review.

**ANALYSIS**

I. **THE MOTION FOR SUMMARY JUDGMENT ON COUNT I IS DENIED.**

The MDOC Defendants argue there is no genuine issue of material fact and they are entitled to judgment as a matter of law on Spann's claim under § 1983 for violation of due process in relation to the administrative adjudication of the allegations of Spann's forcible sexual misconduct.

Spann alleges Jay Cassady, Nick Miller, Raina Martin, Michael Cahalin, George Lombardi, Dave Dormire, and Alan Earls ("Conduct Violation Defendants," or "CV Defendants") denied Spann due process in the course of the major conduct violation proceedings, and the CV Defendants, along with Brian Schmutz (collectively, "Ad Seg Defendants," or "AS Defendants"), denied Spann due process in reviewing Spann's continued solitary confinement.

A. **Due Process for Disciplinary Proceedings**

The Court first considers whether the named Defendants are entitled to summary judgment on Spann's claim for denial of due process relative to the disciplinary proceedings against him.

"Determining whether plaintiff's confinement to 'adseg' was in violation of his due process rights involves a two-step inquiry: [f]irst, the Court determines whether a liberty interest was at stake. Second, the Court must determine what process is necessary to protect that interest." Morgan v. Wallace, No. 1:13CV13 SNLJ, 2014 WL 3557643, at *4 (E.D. Mo. July 18, 2014) (Williams v. Hobbs, 662 F.3d 994, 1000 (8th Cir. 2011)). The MDOC Defendants do not seem to challenge that Spann's liberty interest was implicated in the disciplinary action. Thus, the Court proceeds to considering whether Spann was denied due process necessary to protect his liberty interest.

In the context of disciplinary proceedings against a prison inmate, due process requires the following minimal safeguards: (i) a written notice, at least 24 hours before the hearing on the disciplinary action "to inform an inmate of the charges and enable him to marshal the facts and prepare a defense"; (ii) an opportunity for an inmate "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; (iii) a written statement from an impartial decisionmaker identifying the evidence relied on and reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974).

In this case, first, the parties agree that Spann received a written notice of the conduct violation, informing him of the charges against him. However, genuine issues of material fact exist as to whether this notice was constitutionally sufficient, given that the notice did not state the date of the hearing on the violation or set forth the possible consequences associated with the conduct violation. Next, genuine issues of material fact exist as to whether the Adjustment Board called the witnesses Spann sought to call in his defense. Third, in light of Martin's email to Cahalin sent before Spann's final hearing of the Adjustment Board on July 25, 2014, genuine issues of fact exist as to whether, the Adjustment Board may not have been impartial, or at least made a determination of Spann's guilt before the record was complete. For all of these reasons, the MDOC Defendants are not entitled to summary judgment on this point.

### B. Due Process for Periodic Reviews

Next, the Court considers Spann's § 1983 claim for denial of due process as it relates to review of Spann's adseg classification.

Where an inmate is confined to administrative segregation "for prolonged or indefinite period[,] due process requires that his situation be reviewed periodically in meaningful way." Kelly v. Brewer, 525 F.2d 394, 400 (8th Cir. 1975) (emphasis added). "[A]dministrative segregation is

6

not punitive and it looks to present and future rather than to past." Id. at 399-400. Thus, reasons for segregation "must not only be valid at outset but must continue to subsist during period of segregation." Id. at 400.

The Eighth Circuit has held that one way prison officials fail to provide meaningful review of an inmate's confinement in administrative segregation is where the officials fail to inform the inmate of the specific reasons for his continued confinement. Williams, 662 F.3d at 1009. It has been suggested that review is not meaningful where defendants offer no evidence as to why plaintiff remained a security threat; they offered no evidence about plaintiff's "behavior . . . while in ad seg, his psychological status, or their day-to-day dealings with him, nor any evidence from which it could be concluded that plaintiff had a generally volatile or disruptive character." Williams v. Norris, 277 F. App'x 647, 650 (8th Cir. 2008) (unpublished) (reversing a district court's grant of summary judgment in the Arkansas Department of Corrections' favor). Cf. Shoats v. Horn, 213 F.3d 140, 142–43 (3rd Cir. 2000) (noting that a committee's conclusion that inmate remained significant danger was supported by psychological evaluations characterizing inmate as remorseless sociopath, and describing him as volatile and manipulative). "Whether a given process is meaningful for the purposes of the Due Process Clause is a question of fact . . . ." Williams, 662 F.3d at 1000.

In this case, the parties agree that Spann's adseg status was subject to periodic review. However, with all reasonable factual inferences drawn in Spann's favor, there are genuine issues of material fact as to whether this review was meaningful. Even though Spann's adseg status was reviewed every 90 days, this review was conducted by officials without authority to reclassify his housing status, while the annual review by officials with such authority was conducted without notice to Spann and in his absence. Further, there exist genuine issues of material fact as to whether Spann remained a security threat. The MDOC Defendants did not offer any evidence about

7

Case 2:14-cv-04259-BCW   Document 522   Filed 04/02/19   Page 7 of 13

Spann's behavior while in adseg, his psychological status, or their day-to-day dealings with him, nor any evidence from which it could be concluded that Spann had a generally volatile or disruptive character. Therefore, the MDOC Defendants did not meet their burden to show that they are entitled to summary judgment on this issue.

To the extent the MDOC Defendants argue that the decision to keep Spann in adseg was dictated by Spann's refusal to participate in the Potosi Reintegration Program, the Court finds that there are genuine issues of material fact on the availability of enrollment opportunities in the Potosi Program.

For all the above reasons, the Court denies the MDOC Defendants' motion for summary judgment on Count I of Spann's complaint.

## II. THE MOTION FOR SUMMARY JUDGMENT ON COUNT IV IS DENIED.

The MDOC Defendants argue they are entitled to summary judgment on Spann's § 1983 claim for First Amendment retaliation. In opposition, Spann asserts there exist genuine issues of material fact whether he was subjected to unconstitutional searches, interference with legal mail, and/or unsupported conduct violations in retaliation for availing himself of MDOC's grievance procedure and filing lawsuits challenging the conditions of his confinement and lack of medical treatment.

A § 1983 claim of First Amendment retaliation requires a plaintiff to "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer v. Jackson Cty. Mo., 738 F.3d 907, 911 (8th Cir. 2013).

The MDOC Defendants first assert that they are entitled to summary judgment because Spann failed to establish that the cell searches were motivated by his protected activity. Rather,

8

according to the MDOC Defendants, these searches were conducted based on officer Deardeuff's observation of tobacco being passed between two cells, one of which belonged to Spann.

With respect to retaliatory cell searches, such searches "can form the basis of a First Amendment retaliation claim." Baker v. Steele, No. 4:14CV333 JAR, 2014 WL 4352044, at *6 (E.D. Mo. Sept. 2, 2014).

The Court finds that the following precludes summary judgment in favor of the MDOC Defendants. Spann presented evidence that he engaged in protected activity by filing grievances, IRRs and lawsuits from June 2014 through June 2016 to complain about the conditions of his confinement and lack of medical treatment. He also offered evidence that in February 2016, his cell was searched 20 times in two weeks and that the guards made statements to him that they were taking actions because of his grievances and complaints. Existence of genuine issues of material fact is supported by evidence that the two reporting officers, Deardeuff and Murray, gave conflicting accounts of the location, where the contraband tobacco was found: "next to Spann's cell door," "outside of another cell" and in the middle of the floor – halfway across the walk. Further, Spann has come forth with evidence that Officer Deardeuff was "out to get" Spann. All this evidence viewed in the light most favorable to Spann as the non-moving party, with all the reasonable inference drawn in his favor, shows that genuine issues of material fact exist as to the motivation behind the searches of Spann's cell.

For the same reasons, there are genuine issues of material fact whether a conduct violation against Spann issued on February 28, 2016, for tobacco contraband was retaliatory. Therefore, the Court finds that summary judgment is unwarranted.

Similarly, there are genuine issues of fact relating to the retaliatory nature of Spann's other conduct violation issued on August 24, 2016 for hoarding medication. In his declaration, Spann states that contrary to the conduct violation report, he did not have a stockpile of prescription pills

9

or give them to Officer Counts. (Doc. #405-2). This testimony creates a genuine issue of material fact that precludes summary judgment.

To the extent the MDOC Defendants assert that they are entitled to summary judgment on Spann's claim of tampering with his legal mail for retaliatory reasons, the Court finds that Spann has presented enough evidence to create genuine issues of material fact and to survive summary judgment. In particular, Spann presented evidence that indicates presence of genuine issues of material fact related to the MDOC Defendants' interference with his legal mail by opening and delaying it on several occasions. Spann also offered evidence that the MDOC Defendants made statements that these actions were caused by his grievances and complaints. When viewing this evidence in the light most favorable to Spann with all reasonable inferences drawn in his favor, it creates genuine issues of material fact sufficient for Spann's claim of retaliation to survive the summary judgment motion.

### III. THE MOTION FOR SUMMARY JUDGMENT ON COUNT V IS DENIED.

The MDOC Defendants also move for summary judgment with respect to Spann's claim of civil conspiracy to retaliate against him, asserting that Spann failed to establish one of the elements of civil conspiracy. Spann responds that there is evidence in the record that demonstrates genuine issues of material fact as to the existence of civil conspiracy.

To prove a civil conspiracy under § 1983, Spann was required to establish "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." Livers v. Schenck, 700 F.3d 340, 360–61 (8th Cir. 2012).

The MDOC Defendants assert that Spann failed to present evidence of an unlawful overt act to prevail on his civil conspiracy claim, because he produced no evidence showing that the

MDOC Defendants delayed or destroyed his legal mail, or that Cassady refused to respond to Spann's grievances, or that the conduct violations were unsubstantiated.

As stated above, the Court finds that there are genuine issues of material fact as to whether in issuing the conduct violations against Spann and interfering with his legal mail, the MDOC Defendants acted for retaliatory reasons. The MDOC Defendants' motivation for their actions can, in turn, impact the issue of whether they engaged in the commission of one or more unlawful overt acts. Because the MDOC Defendants do not contend that Spann failed to establish any other elements of civil conspiracy, the Court need not address the sufficiency of Spann's evidence on these other elements of his civil conspiracy claim.

Therefore, the Court is unable to resolve the MDOC Defendants' motion for summary judgment in their favor.

### IV.    THE MOTION FOR SUMMARY JUDGMENT ON OTHER ISSUES IS DENIED.

The MDOC Defendants also argue that they are entitled to summary judgment on Spann's request for compensatory damages, based on the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), which limits recovery of compensatory damages in federal actions by prisoners, absent a showing of a physical injury. Spann responds that the record is sufficient to establish a physical injury in the form of lack of exercise and sleeplessness, and he may properly seek compensatory damages.

Title 42 U.S.C. § 1997e(e) provides: "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." The Eighth Circuit held that this language limits "recovery for mental or emotional injury in all federal actions brought by prisoners," including § 1983 claims. Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004). The Eighth Circuit interpreted the PLRA "to require more than a de minimis physical injury." McAdoo v. Martin, 899 F.3d 521, 525 (8th Cir. 2018). However,

11

this section does not limit other forms of relief, such as "nominal damages, punitive damages, and injunctive and declaratory relief." Royal, 375 F.3d at 723. An inmate's assertions of deprivation of food, drink, and sleep are sufficient for purposes of § 1997e(e), because physical injuries could result from such deprivation. Mitchell v. Horn, 318 F.3d 523, 534–36 (3d Cir. 2003) (cited with approval by Pratt v. Corr. Corp. of Am., 124 F. App'x 465, 467 (8th Cir. 2005)).

Spann's assertions of sleep deprivation could be sufficient to show a physical injury for purposes of § 1997e(e). Therefore, the Court sees no reason to preclude Spann's recovery of compensatory damages.

The Court also denies the MDOC Defendants' motion to the extent it reasserts by reference defenses of privileges and immunities alleged in prior motions to dismiss (Docs. ##29, 178, & 229). All of these motions were filed before the operative complaint. The MDOC Defendants failed to properly plead the affirmative defenses in their answer to the operative complaint. Furthermore, in their briefing on the summary judgment motion, the MDOC Defendants did not offer any evidence relating to their affirmative defenses. Defendants bear the burden of proving their affirmative defenses of privileges and immunities. Harrington v. City of Council Bluffs, Iowa, 678 F.3d 676, 679 (8th Cir. 2012) ("Qualified immunity is an affirmative defense for which the defendant carries the burden of proof. The plaintiffs, however, must demonstrate that the law is clearly established.").

Because, the MDOC Defendants have failed to properly plead or carry its burden of proof with respect to the affirmative defenses of privileges and immunities, the Court denies the motion for summary judgment to the extent it seeks to reassert these defenses by reference to the prior motions to dismiss.

For all the above reasons, the Court denies the MDOC Defendants' motion for partial summary judgment. (Doc. #390). Accordingly, it is hereby

ORDERED the MDOC Defendants' motion for partial summary judgment (Doc. #390) is DENIED.

IT IS SO ORDERED.

DATED: <u>April 2, 2019</u>

<u>/s/ Brian C. Wimes</u>
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT