## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

JAMES LEE SPANN,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Case No. 2:14-CV-04259-BCW
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
GEORGE A. LOMBARDI, et al.,⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀Defendants.⠀⠀⠀)

## ORDER

Before the Court is Defendants' Motion for Summary Judgment. (Doc. #542). The Court, being duly advised of the premises, grants in part and denies in part said motion.

## BACKGROUND

On September 22, 2014, and March 17, 2016, Plaintiff filed two separate civil actions under 42 U.S.C. § 1983 alleging constitutional violations against the City of Jefferson City, Missouri, the Missouri Department of Corrections ("MDOC"), several individual MDOC administrators ("MDOC Defendants"), Jefferson City Correctional Center ("JCCC") employees, and several JCCC health care workers who are employed by medical contractor Corizon, Inc. ("Corizon Defendants")[1].

On March 12, 2018, Plaintiff filed a consolidated third amended complaint alleging: (Count I) administrative detention without due process; (Count II) dangerous conditions of confinement;[2] (Count III) deliberate indifference to serious medical needs; (Count IV) retaliation; and (Count V) civil conspiracy. (Doc. #282).

---

[1] Plaintiff dismissed the Corizon Defendants as parties to this suit. (Docs. #488, #532).
[2] On March 27, 2019, the Court granted Plaintiff's motion to reconsider its dismissal of Count II against the MDOC Defendants (Doc. #385) and reinstated Plaintiff's Count II alleging dangerous conditions of confinement against the MDOC Defendants in their individual capacities (Doc. #512).

On November 5, 2018, Defendants filed a motion for partial summary judgment on Plaintiff's claims for violation of procedural due process, retaliation, civil conspiracy, compensatory relief, and defenses previously alleged. (Doc. #390). On April 2, 2019, the Court denied Defendants' motion (Doc. #522), and Defendants filed a Notice of Interlocutory Appeal (Doc. #524).

Defendants sought appellate review of two Orders: (1) the March 27, 2019 Order reinstating Plaintiff's Count II against the MDOC Defendants alleging unconstitutional conditions of confinement (Doc. #512) ("Reconsideration Order"); and (2) the April 2, 2019 Order denying Defendants' motion for partial summary judgment (Doc. #522) ("Summary Judgment Order"). With respect the Reconsideration Order (Doc. #512), Defendants argued the district court erred in reinstating Plaintiff's Count II for unconstitutional conditions of confinement without considering whether the MDOC Defendants were entitled to dismissal of Count II based on qualified immunity. With respect to the Summary Judgment Order (Doc. #522), Defendants argued the district court erred in denying partial summary judgment for the MDOC Defendants based on qualified immunity.

The Eighth Circuit issued its decision on these arguments on June 3, 2020, granting remand in part (Doc. #533). As to the Reconsideration Order, the Eighth Circuit found this Court should have considered, in reinstating Count II for unconstitutional conditions of confinement against the MDOC Defendants (Doc. #512), whether the MDOC Defendants were entitled to qualified immunity on this claim. As to the Summary Judgment Order, the Eighth Circuit found this Court did not abuse its discretion in denying summary judgment based on qualified immunity because Defendants did not properly brief this issue. (Doc. #533). Ultimately, the Eighth Circuit remanded for further consideration of whether Defendants were entitled to qualified immunity on Count II,

and "reject[ed] the challenge to the [Summary Judgment Order], but the officials may assert a defense of qualified immunity at trial." (Doc. #533-1 at 5).

After the Eighth Circuit returned its mandate as to this interlocutory appeal (Doc. #534), Defendants filed a renewed motion to dismiss, arguing they were entitled to dismissal of Count II for unconstitutional conditions of confinement based on qualified immunity. (Doc. #537). Plaintiff filed opposition suggestions to the motion (Doc. #538) and Defendants filed a reply (Doc. #540). Before the Court issued a ruling on the motion to dismiss (Doc. #537),[3] Defendants[4] filed the instant motion for summary judgment. (Doc. #542). Defendants argue there is no genuine issue of material fact, and they are entitled to judgment as a matter of law on each of Plaintiff's claims for Defendants violations of constitutional rights.

## UNCONTROVERTED FACTS[5]

Plaintiff Spann, who has since been released, was a prisoner at JCCC, within the MDOC system, serving a 15-year sentence for second-degree domestic assault. Spann alleges Defendants violated his constitutional rights during his incarceration.

On April 3, 2014, Spann's cellmate, Timothy Hawkins, accused Spann of sexually assaulting him, choking him out, and threatening to kill him. MDOC investigator Nick Miller was assigned to investigate Hawkins' allegations. As part of the investigation, Miller collected a DNA sample from Hawkins. Spann refused to provide a DNA sample in connection with the investigation. Miller's investigation report, dated June 23, 2014, does not mention any physical

---

[3] On March 31, 2021, the Court denied Defendants' motion to dismiss on the basis that it would consider whether Defendants were entitled to qualified immunity on Count II in the course of determining whether Defendants were entitled to summary judgment. (Doc. #554).

[4] George Lombardi, MDOC Director; Dave Dormire, Director of the MDOC's Division of Adult Institutions; Alan Earls, Deputy Director of the MDOC's Division of Adult Institutions; Raina Martin, JCCC Functional Unit Manager; Michael Cahalin, JCCC Correctional Officer III; Noel Obinaduke, JCCC Case Manager; Nick Miller, MDOC Investigator; Jay Cassady, JCCC Warden; Brian Schmutz, JCCC Functional Unit Manager; Kelly Deardeuff, JCCC Correctional Officer II; April Purifoy, JCCC Mail Room Supervisor; Timothy Murray, JCCC Correctional Officer I; Shane Counts, JCCC Correctional Officer I; and Jim Wakeman, JCCC Maintenance Supervisor. (Doc. #542).

[5] In their summary judgment reply, Defendants state "all disputed factual issues are to be resolved in favor of Plaintiff." (Doc. #547).

3

injury to Hawkins that would be consistent with sexual assault. Though Miller did not have the DNA testing results at the time he issued the investigation report, the report concluded that the "case against Spann is administratively sustained, pending the outcome of the DNA analysis [by the crime laboratory] of the Sexual Assault Evidence Collection Kit and Offender Hawkins clothing."

On July 2, 2014, Spann received notice of a major conduct violation, based on Miller's investigative report. The major conduct violation was also based on Spann's custodial history, which may have included a mistaken recollection by JCCC Warden Jay Cassady that Spann had stabbed another inmate twenty years earlier.

Under MDOC policy, if an inmate is determined to have committed a major conduct violation, he or she must be given a hearing before the Adjustment Board. The hearing is to be held no sooner than 24 hours after and no later than seven days from the date an inmate receives notice of the conduct violation. Spann's notice did not state a date for his hearing and did not indicate that consequences from the major conduct violation might include solitary confinement and/or loss of his parole eligibility date.

Spann's hearing before the Adjustment Board, comprised of Functional Unit Manager Raina Martin and Correctional Officer Michael Cahalin, started sometime in July 2014. On July 22, 2014, Martin sent an email to Cahalin that stated, "[h]e is guilty." The hearing was "tabled" until July 25, 2014. Following the hearing, the Adjustment Board issued a Disciplinary Action Report, finding Spann sexually assaulted Hawkins. The report further stated Spann "requested witnesses, see attached," but the attachment is not in the record. Cassady was responsible for reviewing the Disciplinary Action Report. Because this was Spann's second forcible sexual misconduct while in custody, Cassady requested, through MDOC Deputy Director Alan Earls, single-cell status for Spann.

Thereafter, Spann was placed in single-cell status, referred to as administrative segregation, or adseg. In adseg, Spann was housed near inmates classified as having the highest degree of mental illnesses. Because of the risk of suicide attempts among the mentally ill inmates, the lights in adseg were left on for several days at a time.

From 2014 to 2016, Spann filed 22 Informal Resolution Requests and grievances against Defendants. (Doc. #546 Ex. 59). Beginning in May 2014, Defendants denied Spann showers and outside recreation. Defendants repeatedly searched Spann's cell, impermissibly destroyed his belongings, and denied him access to his legal mail. Defendants also made remarks about Spann's grievances and pending legal proceedings.

On February 28, 2016, Spann received a false conduct violation for possession of tobacco (Doc. #546 Ex. 65) in retaliation by Deardeuff and Murray for availing himself of the grievance process. On August 24, 2016, Counts issued Spann a false conduct violation, on the basis that Spann gave him an envelope stuffed with multiple prescription medications and asked Counts to deliver the envelope to another inmate. After issuing the conduct violation in connection with this alleged incident, Counts told Spann that "you should thank Mr. Cassady for this violation because if you don't drop that lawsuit against him, I guarantee you that you get more of these violations for being in the wrong place at the right time." Spann continued to file grievances which were repeatedly denied and he was accused of misusing the grievance procedure because his allegations were duplicative.

## LEGAL STANDARD

A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

5

The party seeking summary judgment bears the burden to establish the absence of a genuine issue of fact and entitlement to judgment as a matter of law. Celotex, 477 U.S. at 323. "When considering a motion for summary judgment, a court must evaluate the evidence in the light most favorable to the nonmoving party and must afford the nonmoving party the benefit of all reasonable inferences." Arvest Bank v. Uppalapati, No. 11-03175-CV-S-DGK, 2013 WL 85336, *1 (W.D. Mo. Jan. 7, 2013) (citing Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991)).

## ANALYSIS

In the motion before the Court, Defendants argue there is no genuine issue of material fact and they are entitled to summary judgment on each of Plaintiff's claims based on qualified immunity. The Court notes, at the outset, while the Eighth Circuit found this Court improperly failed to consider whether Defendants were entitled to qualified immunity on Plaintiff's Count II for unconstitutional conditions of confinement, the Eighth Circuit rejected Defendants' challenge to the summary judgment order despite Defendants' assertion of qualified immunity. (Doc. #522). Nonetheless, Defendants now seek summary judgment on each of Plaintiffs claims in the third consolidated complaint (Doc #282) based on qualified immunity. (Doc. #542).

First, Defendants argue there is no genuine issue of material fact and they are entitled to judgment as a matter of law that because Spann is no longer in Defendants' custody, his claims for injunctive relief are moot and should be dismissed. Second, Defendants argue there is no genuine issue of material fact and they are entitled to judgment as a matter of law that they are entitled to qualified immunity on Plaintiff's claims for monetary relief, such that each of Plaintiff's Counts I, II, III, IV, and V should be dismissed. (Doc. #542, #543). On the issue of qualified immunity, Defendants assert that even accepting all of Plaintiff's allegations as true, Plaintiff cannot establish, as a matter of law, Defendants' conduct violated a clearly established right.

Case 2:14-cv-04259-BCW   Document 576   Filed 09/30/21   Page 6 of 24

**A. Defendants' motion for summary judgment on Plaintiff's claims for injunctive relief is granted.**

Defendants argue Plaintiff's claims for injunctive relief are now moot because Plaintiff is no longer in custody. In opposition to summary judgment based on mootness, Plaintiff argues though he is no longer in custody, his prayer for injunctive relief falls within an exception to the mootness doctrine.

Article III of the Constitution requires "the litigants to present an actual, ongoing controversy." Iowa Prot. & Adoc. Serv. v. Tanager, Inc., 427 F.3d 541, 543 (8th Cir. 2005). "A case that no longer presents a live case or controversy is moot, and a federal court lacks jurisdiction to hear the action." Minn. Humane Soc. v. Clark, 184 F.3d 795, 797 (8th Cir. 1999).

An exception to mootness doctrine arises "where the challenged conduct is capable of repetition, yet evading review." Id. (citing Weinstein v. Bradford, 423 U.S. 147, 149 (1975)). "To come within this narrow exception, the following two elements must exist: (1) there must be a reasonable expectation that the same complaining party will be subjected to the same action again, and (2) the challenged action must be of a duration too short to be fully litigated before becoming moot." Ringo v. Lombardi, 677 F.3d 793, 798 (8th Cir. 2012). "A mere 'physical or theoretical possibility' is insufficient; a 'demonstrated probability' must be shown." Id.

In this case, Plaintiff requests injunctive relief (1) ordering Defendants to send Plaintiff to an outside hospital for treatment for his back and stomach injuries; (2) ordering Defendants to have Plaintiff evaluated by an outside psychiatrist; (3) ordering Defendants to bring in an outside professional to test and clean the JCCC ventilation system; (4) ordering Defendants to stop housing seriously mentally ill inmates in close proximity to those who are not mentally ill; and (5) ordering Defendants to lift Plaintiff's single-cell mandate.

Defendants argue the injunctive relief sought by Plaintiff centers on the conditions he was experiencing while housed at JCCC, and because Plaintiff is no longer incarcerated, he is no longer

subject to the alleged conditions such that his claims for injunctive relief are moot. Plaintiff argues despite his release from custody, he still has a personal stake in the outcome. In support of this argument, Plaintiff cites Pugh v. Goord, 571 F. Supp. 2d 477, 488-89 (S.D.N.Y. 2008).

The Pugh court applied the exception to the mootness doctrine under circumstances where the inmate-complainant was transferred to another facility within the same custodial system. Id. at 488. The defendant-state department of corrections argued the inmate's § 1983 claims for infringement of the inmate's free exercise rights were moot because the inmate's § 1983 claims arose while he was housed at one facility, and the inmate was now housed in another facility. Id. The Pugh court found the inmate-complainant's free exercise claim seeking injunctive relief to fall within the "capable of repetition, yet evading review" exception to the mootness doctrine because, even if as a general matter, "it is true that a prisoner's transfer from a prison facility moots that prisoner's claim for injunctive relief against the transferring facility," the inmate-complainant was experiencing the same alleged free exercise infringement at the facility to which the inmate had been transferred. Id. at 489 (inmate-complainant demonstrated (1) duration element satisfied because the department of corrections could transfer him to another facility at will; and (2) he was still being deprived of same free exercise rights at the new facility and was thus subject to the same allegedly unconstitutional action).

Though Plaintiff relies on Pugh to argue he maintains "a legally cognizable interest" in the outcome of the litigation such the injunctive aspects of Plaintiff's complaint are not moot, Plaintiff is no longer in Defendants' custody. Whereas the inmate-complainant in Pugh was subject to the same allegedly unconstitutional conditions at the facility to which he was transferred because both the transferee facility and the transferor facility were within the same department of corrections system, Plaintiff has been released. He is no longer experiencing the alleged

unconstitutional conditions and the parties are no longer positioned such that the Court might grant any injunctive relief that Defendants would be able to provide to Plaintiff.

To conclude Plaintiff's claims for injunctive relief fall within the narrow exception to the mootness doctrine as capable of repetition yet evading review, Plaintiff must show (1) the challenged action was too short in its duration to be fully litigated before it was no longer an issue; and (2) there is reasonable expectation Plaintiff would be subject to the same action again. Id.

As to the "duration" requirement, Plaintiff's allegations of violations of due process, unconstitutional conditions of confinement, retaliation, and civil conspiracy are not generally the type of alleged deprivations that are so short in time such that they evade review; courts commonly fully prisoner challenges based on alleged constitutional violations. Smith v. City of Minneapolis, 754 F.3d 541, 546 (8th Cir. 2014); Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974); Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999); Carty v. Farrelly, 958 F. Supp. 727, 738 (D. Va. 1997); Helling v. McKinney, 509 U.S. 25 (1993); Board v. Farnham, 394 F.3d 469, 473 (7th Cir. 2005). Moreover, Plaintiff originally filed this case in 2014, suggesting the continuing nature of the constitutional violations alleged.

Though Plaintiff's failure to meet the duration requirement of the exception to the mootness doctrine is a sufficient basis to find the exception does not apply, the Court nonetheless considers whether Plaintiff as demonstrated a reasonable expectation that he would be subject to the same allegedly unconstitutional conduct again. To meet the "reasonable expectation' requirement, Plaintiff must show more than "a mere physical or theoretical possibility" that "the same controversy will recur involving the same party." Murphy v. Hunt, 455 U.S. 487, 482 (1982) (citing Weinstein v. Bradford, 423 U.S. 147, 149 (1975)). Under the circumstances presented here, Plaintiff has not set forth a "demonstrated probability" that he will again be in Defendants' custody and subject to the same alleged violations of his constitutional rights.

Therefore, the "capable of repetition, yet evading review" exception to the mootness doctrine is inapplicable here and Plaintiff's release from custody rendered moot his claims for injunctive relief. Defendants' motion for summary judgment on Plaintiff's claims for injunctive relief is granted.

**B. Defendants' motion for summary judgment based on qualified immunity is granted in part and denied in part.**

Next, the Court considers whether Defendants are entitled to qualified immunity with respect to each of Plaintiffs' § 1983 claims. Defendants argue even accepting Plaintiff's allegations as true, Plaintiff's claims should be dismissed because Plaintiff has not and cannot demonstrate a violation of any clearly established right. Consequently, Defendants contend summary judgment based on qualified immunity is warranted. Therefore, the issue before the Court on Counts I-V is whether Plaintiff has alleged a constitutional violation that was clearly established at the time of the alleged violations which, for purposes of Plaintiff's claims, was between 2014 and 2016.

"The defense of qualified immunity gives government officials engaged in discretionary activities immunity from liability unless their conduct violates clearly established statutory or constitutional rights." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Officials are entitled to qualified immunity only to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hedges v. Poletis, 177 F.3d 1071, 1074 (8th Cir. 1999) (quoting Harlow, 457 U.S. at 818).

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). It protects government officials from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (quotation omitted). Put another way, "[q]ualified immunity gives government officials breathing room to make

reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Stanton v. Sims, ___ U.S. ___, 134 S.Ct. 3, 5 (2013) (internal quotations omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Id. (quoting Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)) (internal quotation marks omitted).

The Court uses a two-part test to determine whether a government official is entitled to qualified immunity. Branch v. Gorman, 742 F.3d 1069, 1072 (8th Cir. 2014). First, the Court is to determine "whether the facts alleged, construed in the light most favorable to [Plaintiff], established a violation of a constitutional or statutory rights." Id. Second, the Court considers "whether that right was clearly established at the time of the alleged violation, such that a reasonable officer would have known his actions were unlawful." Id. The Court may address the questions in any order, but the officer will be found immune unless both are answered affirmatively. Winslow v. Smith, 696 F.3d 716, 731 (8th Cir. 2012) (citation omitted); Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012).

In this context, a right is "clearly established" only if, at the time of the alleged conduct a reasonable official would have known that his or her conduct violated the constitutional right at issue. Ashcroft v. al-Kidd, 563 U.S. 731 (2011). This "clearly established" standard may not be established generally; rather, a clearly established right is only one where there exists a controlling factually analogous case, or "a robust consensus" of persuasive authority. Id.

1.  **Defendants' motion for summary judgment on plaintiff's Count I for violation of procedural due process is granted in part and denied in part.**

Defendants argue they are entitled to summary judgment on Plaintiff's Count I for violation of procedural due process because even if the Court finds Defendants violated the Eighth Amendment in the application of Plaintiff's adseg classification, they are nonetheless entitled to qualified immunity because said violation was not clearly established at the time of the alleged

11

conduct. However, Defendants fail to address Plaintiff's claims regarding the disciplinary proceedings. Plaintiff argues it is well established that he has a right: to written notice prior to a disciplinary hearing; to call witnesses at the hearing; to an adequate written explanation if the right to call witnesses is denied; and to an impartial decision maker, and it is Defendants' failure to provide these procedural requirements that violated Plaintiff's rights in Count I

### a. Due process for periodic reviews

First, the Court considers Plaintiff's claims for violation of procedural due process based on Defendants' failure to provide adequate periodic reviews while holding Plaintiff in adseg. It is undisputed that Spann's adseg status was subject to periodic review; however Defendants argue even taking all of Plaintiff's allegations as true, Plaintiff cannot show a violation of a clearly established right. Plaintiff alleges Defendants violated his procedural due process rights pertaining to Defendants' periodic reviews of his adseg status because Plaintiff's reviews were conducted by officials without authority to reclassify his housing status and the annual review by officials with such authority was conducted without notice to Spann and in his absence. Plaintiff asserts these circumstances demonstrate Defendants' violation of Plaintiff's clearly established procedural due process rights.

In asserting the right to qualified immunity on Plaintiff's claim for violation of procedural due process relative to the periodic reviews of Plaintiff's ad seq status, Defendants exclusively rely on Hamner v. Burls, 937 F.3d 1171 (8th Cir. 2019). In Hamner, plaintiff claimed the "prison officials afforded him inadequate process by failing to articulate a clear justification for his placement in administrative segregation and to afford meaningful periodic review of his classification thereafter." Id. at 1180. The Eight Circuit held because Plaintiff could not present law to support the position that defendants violated a clearly established right, based on "inadequate justification for administrative segregation or shortcomings in review of a prisoner's placement" defendants were entitled to qualified immunity. Id.

Here, like Hamner, Plaintiff has not presented precedent that shows it is clearly established that prison officials who have authority to reclassify housing must conduct the periodic reviews or give notice of such reviews. Without such precedent, Plaintiff cannot show the "violative nature of [the] particular conduct." Id. Therefore, Defendants are entitled to qualified immunity on Count I as it relates to Plaintiff's allegations of due process violations for the manner in which his periodic reviews were conducted.

### b. Procedural due process for disciplinary proceedings

Next, the Court considers Plaintiff's claims for violations of procedural due process based on his disciplinary proceedings. Procedural due process for a disciplinary hearing against an inmate has three requirements: (1) written notice, at least 24 hours before the hearing, "to inform an inmate of the charges and enable him to marshal the facts and prepare a defense"; (2) an opportunity for an inmate "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; (3) a written statement from an impartial decisionmaker identifying the evidence relied on and reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974). Plaintiff argues a robust consensus of case law exists as to each of these three requirements such that Plaintiff alleges a violation of procedural due process pertaining to his disciplinary proceedings that was clearly established at the time of the alleged violation such that Defendants are not entitled to qualified immunity.

### i. Insufficient notice

Plaintiff first alleges violations of procedural due process because the notice provided failed to state a hearing date nor set forth the potential consequences for the violation, citing Dible v. School, 506 F.3d 1106 (8th Cir. 2007) (wherein the Eighth Circuit denied qualified immunity for defendants on plaintiff's due process violation claims, because the hearing notice at issue did

not identify a victim, name a witness, or specify the date of location of the assault alleged against the plaintiff).

Plaintiff asserts a violation of procedural due process because his notice failed to state the date of the hearing or set forth the consequences associated with the alleged conduct violation. In reliance on Dible, the Court finds the right to a proper disciplinary notice identifying a "victim . . . witnesses . . . date of location of the [violation]" was clearly established at the time of the alleged conduct and a reasonable official would have known. Id. at 1108. Therefore, Defendants are not entitled to qualified immunity to the extent Plaintiff's claims are predicated on the issue of notice for the disciplinary proceedings.

### ii. Witnesses

Next, Plaintiff alleges a violation of procedural due process based on Defendants' denial of the opportunity for Plaintiff to call witnesses, and asserts Defendants are not entitled to summary judgment because the opportunity to call witnesses was clearly established at the time of the alleged violation, citing Moran v. Farrier, 924 F.2d 134 (8th Cir. 1991); Wolff, 418 U.S. 539 (1974); Christopher v. Wade, No. 93-1404, 1993 WL 372695 (8th Cir. Sept. 24, 1993).

In Wolff, the Supreme Court found a prison facility has broad discretion to allow or disallow the accused to call witnesses but if the accused is not permitted to call a witness, the facility should provide an explanation. 418 U.S. at 539. As such, "prison officials may not arbitrarily deny an inmate's request to call witnesses at a disciplinary proceeding." Moran, 924 F.2d at 137. The Eight Circuit has held when plaintiff is not given a reason as to why witnesses were not called there may be a due process violation. Wade, 1993 WL 372695 at *3.

Here, Plaintiff argues his due process rights were violated because he was not permitted to call a witness, nor was he provided an explanation for why his witness was not allowed. The Court, recognizes "[p]rison officials must have the necessary discretion to refuse to call witnesses that may create a risk of reprisal or undermine authority." Id. at *1. Notwithstanding, it is clearly

14

established that "[prison] officials must explain their reason for refusing to call a witness." Id.  The Court finds the right to call witnesses and an explanation of a denial of that right for administrative hearings was clearly established at the time of the alleged conduct and a reasonable official would have known. Therefore, Defendants are not entitled to qualified immunity for Plaintiff's Count I to the extent it is predicated on Defendants' denial of the opportunity to call witnesses without explanation.

### iii. Decision

Plaintiff further alleges Defendants violated his procedural due process rights because the Adjustment Board's decision summarily states Plaintiff is guilty and his hearing was not heard by an impartial decision maker. In response, Defendants argue Plaintiff cannot show the law was clearly established so that Defendants knew they were violating Spann's rights, thus, they are entitled to qualified immunity.

The purpose of the written decision requires "the disciplinary board make reference to the evidence it relied on" and give "reasons for the disciplinary action." Brown v. Frey, 807 F.2d 1407, 1410 (8th Cir. 1986). At minimum, the decision should, "assure[ ] that the adjustment board did not act arbitrarily." Id. at 1414. In this case, the decision after the Adjustment Board hearing summarily stated, "[b]ased on evidence and investigative material . . . [Plaintiff] sexually assaulted another offender." Though Brown does not require the decisionmaker to "reconstruct in a technical and detailed fashion, the incident," the decision here does not reference the evidence relied upon as required by law. Id. at 1412. The Court thus finds the decision issued by the Defendants is arbitrary and Defendants not entitled to qualified immunity on this point.

Finally, Plaintiff argues he has a clearly established right to an impartial decision maker and Warden Cassady violated that right because prior to the hearing Martin sent an email to Cahalin stating "[h]e is guilty." Plaintiff argues a robust consensus of case law supports his

15

position. See <u>Hamner v. Kelley</u>, 737 F. App'x 801 (8th Cir. 2018) (finding a genuine issue of material fact remained as to whether the decision maker was impartial, since the prisoner reported a violation against the decision maker prior to the disciplinary hearing). See also <u>Shabazz v. Bezio</u>, 511 Fed. App'x. 28 (2nd Cir. 2013) (wherein the Second Circuit vacated and remanded the district court's judgment finding genuine issues existed as to whether an impartial decisionmaker resided over the proceeding).

Like <u>Kelley</u> and <u>Shabazz</u>, the record presents at least one genuine issue of material fact suggesting the decision maker may not have been impartial. Therefore, Defendants should have known their actions violated a clearly established law, as such Defendants are not entitled to qualified immunity on Plaintiff's due process claim as it relates to this point.

Based on the foregoing, Plaintiff's Count I procedural due process claim is based on rights that were clearly established at the time of the alleged violation and a reasonable officer would have known conducting the disciplinary hearing in such a manner violated procedural due process. Therefore, Defendants' motion for summary judgment on Count I as it relates to the disciplinary proceedings is denied.

2. **Defendants' motion for summary judgment on Plaintiff's Count II Eighth Amendment conditions of confinement claim is granted.**

In Count II, Plaintiff alleges he was subjected to dangerous conditions of confinement while in administrative segregation due to the poor ventilation system and his placement near mentally ill inmates. Plaintiff alleges the ventilation in his cell was inadequate. (Doc. #282, ¶78). Plaintiff claims he put Defendants on notice and was instructed to "file medical request forms to be seen by medical staff and file grievances if Plaintiff felt that way about the ventilation." <u>Id.</u> at ¶81. Additionally, Plaintiff complains that he was "constantly prevented from sleeping by the noise caused by the significantly mentally ill inmates." <u>Id.</u> at ¶90. Plaintiff further alleges the mentally

ill inmates, near where Plaintiff was house, routinely kicked doors, screamed, attempted to commit suicide, and threw feces and urine on staff. Id.

In the instant motion, Defendants argue they are entitled to qualified immunity because even if the Court finds an Eighth Amendment violation based on (i) inadequate ventilation; and/or (ii) proximity to mentally ill inmates, said violation was not clearly established at the time of the alleged conduct. (Doc. #543). Plaintiff opposes, arguing it is clearly established that housing inmates in a location with inadequate ventilation and/or in proximity to mentally ill inmates violation of a prisoner's constitutional rights under the Eighth Amendment.

Defendants reassert their arguments set forth in their previously filed motion to dismiss this count. (Doc. #522). As to the ventilation system, Defendants argue Plaintiff has not provided case law that establishes the appropriate way the ventilation should be cleaned and maintained. (Doc. #537, p. 5). Defendants further assert "[a] prisoner does not have a free-standing right to control a prison's ventilation system." Id.

As to Plaintiff's placement near mentally ill inmates, Defendants cite Abdur-Raheem v. Selsky, 806 F.Supp. 2d 628, 636-37 (W.D.N.Y. 2011), which explained that [p]laintiff's complaint that being housed in [the segregated housing unit] near unruly mentally ill prisoners was 'depressing and traumatic' for him[…] fails to allege sufficient facts to plausibly state a deliberate indifference claim against" defendant. (Doc. #537, p. 5). Conditions of confinement may constitute cruel and unusual punishment only when "they result[] in unquestioned and serious deprivations of basic human needs ... [which], alone or in combination, may deprive inmates of a minimal civilized measure of life's necessities." Id. (citing Rhodes v. Chapman, 452 U.S. 337 (1981)). Defendants argue there is no basis to conclude the circumstances of Plaintiff's confinement violates this standard.

Defendants again rely on <u>Hamner v. Burls</u>, 937 F.3d 1171 (8th Cir. 2019). In <u>Hamner</u>, the Eighth Circuit summarized plaintiff's allegations as follows:

> While in administrative segregation, Hamner remained in his cell for twenty-three hours per day, leaving for "one hour a day, five days per week," if security concerns or weather did not interfere. Hamner was allowed three showers per week, three phone calls per week, and often served cold food. He had no television in his cell, and could not see the public television in the hallway due to distance and an obstructed view. He was allowed to keep a limited number of books in his cell, but complains that his light bulb was often burned out, "making it hard to see or read anything for days." He also lost his job and could not receive vocational training. He had no roommate and "rarely any human contact."
>
> Administrative segregation allegedly affected Hamner's health. He describes being "deprived of his prescribed adequate medical treatment and medication" and having his "pleas" for treatment "ignored." These deprivations, combined with the stress of solitary confinement and the alleged futility of his review process, impacted his mental health: he "often couldn't sleep, had a lack of appetite, hallucinations, nightmares, restlessness, anxiety and panic attacks," and felt a risk of "irreparable emotional damage" or suicide. Hamner alleged that he was "skipped [r]andomly at pill call," and that officers working in the administrative segregation unit knew about the gaps in his treatment.

<u>Id.</u> at 1174–75.

When determining the issue of qualified immunity, the court explained "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." <u>Id.</u> at 1178. The court went on to find the particular conduct alleged in plaintiff's pleadings did run not run afoul of the Eighth Amendment because "[a] reasonable prison official could have understood the Eighth Amendment to allow administrators an opportunity to fix problems that arise in a prison's health care system by responding to grievances and taking corrective actions." <u>Id.</u>

In Plaintiff's previous opposition to Defendants' motion to dismiss Count II (Doc. #538, pp. 3-4), he cited several cases asserting the general proposition that conditions like those alleged by Plaintiff give rise to claims under the Eighth Amendment. See <u>Gates v. Cook</u>, 376 F.3d 323, 342-43 (5th Cir. 2004) (affirming trial court injunction against housing certain inmates in cells next to psychiatric patients who scream, beat on metal toilets, and throw feces, resulting in chronic

sleep deprivation); Thaddeus-X v. Blatter, 175 F.3d 378, 402-03 (6th Cir. 1999) (placing a non-mentally ill inmate in with mentally ill inmates created an unreasonable health risk for the prisoner-plaintiff sufficient to survive summary judgment on Eighth Amendment claim); DeMallory v. Cullen, 855 F.2d 442, 444-46 (7th Cir. 1988) (reversing dismissal of conditions of confinement claim where prisoner was housed with mentally-ill inmates who created disturbances and unsanitary conditions by throwing food, human waste, and other debris); Goff v. Harper, 59 F. Supp. 2d 910 (S.D. Iowa 1999); Carty v. Farrelly, 957 F. Supp. 727, 738-39 (D.V.I. 1997) ("Failure to house mentally ill inmates apart from the general prison population also violates the constitutional rights of both groups."). In opposition to Defendants' instant motion, Plaintiff's only mention of Hamner is a footnote claiming the case is "inapposite because there was no liberty interest implicated there." (Doc. #546, p. 89).

Based on the cases cited by both parties, there exists a debate as to whether a violation of clearly established law exists. Although Plaintiff has presented a debatable argument, Plaintiff has not established that, under the facts alleged in this case, the contours of the constitutional rights were so clear that every reasonable official would have understood that Defendant's actions violated those rights. Thus, Plaintiff fails to satisfy the second prong of qualified immunity, and Defendants are entitled to qualified immunity regarding Plaintiff's Count II.

### 3. Defendants' motion for summary judgment on Plaintiff's Count III deliberate indifference to medical needs claim is granted.

Defendants argue they are entitled to summary judgment on Plaintiff's Count III based on qualified immunity, alleging Defendants' deliberate indifference to a serious medical need. Here, Plaintiff's briefing fails to respond to Defendants' argument in support of summary judgment. Plaintiff, in his opposition fails to even state "deliberate indifference to medical need" or identify Count III. The Court finds Plaintiff has failed to provide a factually analogous case or robust

19

consensus of persuasive authority to preclude summary judgment. <u>Ashcroft</u>, 563 U.S. at 742. Thus, Defendants' motion for summary judgment on Count III is granted.

### 4. Defendants' motion for summary judgment on Plaintiff's Count IV for retaliation is denied.

Plaintiff alleges Defendants retaliated against him in violation of his First Amendment rights when they denied him showers, denied him outside recreation, opened his certified mail, denied him medical treatment, conducted excessive cell searches, and falsified violation reports in because Plaintiff had availed himself of the grievances process. Defendants argue even if the Court finds a First Amendment violation based on these facts, said violation was not clearly established at the time of the alleged conduct, thus Count IV should be dismissed.

An inmate may assert a cause of action for retaliatory discipline under § 1983 where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights. <u>Hartsfield v. Nichols</u>, 511 F.3d 826, 829 (8th Cir. 2008). However, a conduct violation is not retaliatory if it is underpinned by an actual violation of a prison rule. <u>Id.</u> Moreover, in order to establish a § 1983 retaliation claim, plaintiff must prove: (1) the exercise of a constitutionally-protected right by the plaintiff; (2) an adverse action against the plaintiff by the defendant; and (3) a causal connection between the two. <u>McGee-El v. Chadra Hartegan</u>, No. 08-00048, 2009 WL 3271301, at *3 (E.D. Mo. Oct. 9, 2009).

With respect to the second element of a retaliation claim, "the [alleged] adverse action must be of the type that would chill an individual of ordinary firmness from exercising the right at issue. The adverse action does not need to be independently improper, however, because otherwise proper conduct becomes actionable when it is the result of a retaliatory motive." <u>Id.</u> With respect to the third element of a retaliation claim, "plaintiff must allege that there was a 'causal link to, and direct responsibility for, the alleged deprivation of rights'; § 1983 does not permit respondeat superior liability." <u>Id.</u>

It is clearly established that Plaintiff has a right "to be free from retaliation for availing one's self of the prison grievance process." Nelson v. Shuffman, 603 F.3d 439, 449-50 (8th Cir. 2010). In reliance on Spencer v. Jackson Cnty. Mo., 738 F.3d 907 (8th Cir. 2013) and Santiago v. Blair, 707 F.3d 984 (8th Cir. 2013), Plaintiff argues a robust consensus of case law exists that demonstrate Defendants' are not entitled to qualified immunity on the retaliation claim.

In Spencer, the Eighth Circuit found a genuine issue of material fact as to whether defendants' action, removing an inmate from the worker's program because the inmate exercised his rights under the First Amendment, was retaliatory. 738 F.3d at 913-914. The court explained defendants were unable to provide the information relied on at the time of the allegations to show the removal from the program was not retaliatory. Id. at 913. Because defendants could not present this evidence, they were not entitled to qualified immunity on the retaliation claim Id. at 909.

In Santiago, after an inmate's altercation with prison guards, the inmate filed numerous grievances alleging their conduct following the altercation violated his constitutional rights. 707 F.3d at 988. Specifically, the inmate alleged the prison guards threatened his life, falsified conduct violation reports, and placed the inmate in a cell with no running water or toilet in retaliation for the inmate's grievance filings. Id. at 989. The Eighth Circuit affirmed the denial of summary judgment on the inmate's retaliation claim finding "a reasonable jury could conclude that these facts demonstrate that [the prison guard] took the above-described adverse actions because [the inmate's] continued use of the prison grievance procedure." Id. at 994.

Here, Plaintiff specifically argues Defendants retaliated against him because he filed grievances. Plaintiff alleges after he filed grievances, Defendants retaliated by denying him showers, denying outside recreation, opening his certified mail, denying him medical treatment, conducting excessive cell searches, and falsifying violation reports. Plaintiff's protected conduct under the First Amendment and Defendant's alleged retaliatory conduct stemming from the

exercise of those rights is analogous to <u>Spencer</u> and <u>Santiago</u> because all the alleged retaliatory conduct occurred after Plaintiff filed grievances and Defendants' alleged conduct in Plaintiff's case include actions that have been found to be retaliatory in other cases, i.e. false violation reports, denial of activities previously available.

Defendants argue even if Plaintiff's claims are factually true, they are simply derivative of the other claims and therefore should be dismissed. Nevertheless, the Court finds Plaintiff has a clearly established right to avail himself of the prison grievance process. The Court further finds Defendants took adverse action against Plaintiff when they denied him showers, denied outside recreation, opened his certified mail, denied him medical treatment, conducted excessive cell searches, and falsified violation reports. Lastly, the Court finds Plaintiff has sufficiently alleged a causal connection between exercising his constitutional right to file grievances and Defendants' adverse action against him. Whether the actions of Defendants were motivated by Plaintiff's First Amendment activity, is a question for the jury. Therefore, Defendants are not entitled to qualified immunity on Count IV.

5. **Defendants' motion for summary judgment on Plaintiff's Count V for civil conspiracy is granted.**

In support of Count V, Plaintiff contends Defendants conspired to file false conduct violations, interfere with his legal mail, and find Plaintiff guilty during disciplinary proceedings. Defendants argue even if the Court finds a constitutional violation under the First and/or Fourteenth Amendment attributable to these allegations, said violation was not clearly established at the time of the alleged conduct.

"'[A] conspiracy claim . . . requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators.'" <u>Ewing v. Kempker</u>, Case No. 1:13-114, 2014 WL 522054, at *2 (E.D. Mo. Feb. 10, 2014) (quoting <u>Murray v. Lene</u>, 595 F.3d 868, 870 (8th Cir. 2010) (internal citations omitted)). "To prove a § 1983 conspiracy claim . . . the plaintiff must

22

show: that the defendant conspired with others to deprive him or her of his constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999). A "plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." Id.

Upon review of the case law provided by Plaintiff[6], the Court finds Defendants are entitled to qualified immunity because Plaintiff only presents cases at a high level of generality and has not provided clearly established law that is particularized to the facts of the case to defeat summary judgment. Hamner, 937 F.3d at 1179 (citation omitted).

Plaintiff relies on Small v. McCrystal, 708 F.3d 997 (8th Cir. 2013) to support his claim for civil conspiracy. However, in Small, the constitutional violations alleged related to the defendant's unlawful arrest, and conspiracy by law enforcement. Id. at 1105. Here, Plaintiff is alleging Defendants' acted together to place him in adseg and keep him there, thus their actions rise to a civil conspiracy. But, Plaintiff has not provided any case law that is factually similar to that alleged by Plaintiff that could lead to rebut Defendants' immunity. Thus, Defendants are entitled to qualified immunity on Count V because Plaintiff has failed to show the law was clearly established at the time of the alleged conduct.

Based on the foregoing, Defendants are granted summary judgment on all of Plaintiff's claims for injunctive relief. Defendants are also granted summary judgment for the monetary relief

---

[6] The Court notes, Plaintiff's citation for Moran, 296 F.3d at 647 and White, 696 F.3d at 757 are incorrect and it is possible Plaintiff was attempting to cite different cases. Moran deals with a prisoner's process for meaningful grievance review and establishes due process violations but does not recognize civil conspiracy liability which Plaintiff's briefing claims. Further, the Court is unclear whether Plaintiff is citing White v. Smith, 696 F.3d 740 (8th Cir. 2012) (affirming the denial of summary judgment on the issue of qualified immunity based on allegations that defendants conspired to manufacture evidence and obtain false testimony against plaintiff) or White v. McDonnell Douglas Corp., 904 F.2d 456 (8th Cir. 1990) (finding for defendants on claims of retaliation in the workplace based on internal complaints of discrimination).Therefore, the Court will not address these cases under this section.

based on qualified immunity for due process violations relating to Plaintiff's periodic review of Plaintiff's ad seg placement (Count I in part), unconstitutional conditions of confinement (Count II), deliberate indifference to medical needs (Count III), and civil conspiracy (Count V). The motion for summary judgment is otherwise denied. Accordingly, it is hereby

ORDERED Defendants' Motion for Summary Judgment (Doc. #542) is GRANTED IN PART and DENIED IN PART. Defendants' motion is granted as it relates to Plaintiffs' claims for injunctive relief. Defendants' motion based on qualified immunity is granted on Count I in part, Count II, Count III, and Count V. The motion is denied based on qualified immunity on Count I in part and Count IV.

IT IS SO ORDERED.

Dated: <u>September 30, 2021</u>

/s/ Brian C. Wimes
JUDGE BRIAN C. WIMES

UNITED STATES DISTRICT COURT